23 C.C.P.A.(Patents)

## In re SHOEMAKER.

### Patent Appeal No. 3558.

Court of Customs and Patent Appeals,
April 6, 1936.

Barnett & Truman, of Chicago, Ill. (Percival H. Truman, of Chicago, Ill., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the primary examiner rejecting claims Nos. 1 to 11, inclusive, 13, and 14 in appellant's application for a patent for an alleged invention relating to a composite bearing element, consisting of a body or backing member of iron, steel, brass, or other metal, and a lining or bearing metal facing of hardened lead alloy, such as "Satco metal," "Frary metal," "Bahnmetall," or certain types of "Babbitt metal," joined together by means of an intervening bonding layer of solder, and a method for making the same.

Division was required of the method claims, 3, 4, and 6, which were retained in the case for the purpose of raising the question of the correctness of the board's holding.

The product claims, Nos. 1, 2, 5, 7 to 11, inclusive, 13, and 14, were considered on their merits, and were rejected for want of patentability in view of the prior art.

Claims 1, 2, and 3 are illustrative. They read:

"1. In a composite bearing element a metal body, a facing consisting of a high melting point hardened lead alloy containing an alkaline earth or an alkali metal, and a lead and tin solder stratum between the body and facing having a tin content of between 20% and 30%.

"2. In a composite bearing element a metal body, a facing consisting of a high melting point hardened lead alloy containing an alkaline earth or an alkali metal

and a bonding stratum between the body and facing comprising a reaction product of lead, tin, zinc chloride, and the metal of the body.

"3. Method of soldering at a high melting point hardened lead bearing metal to the metal body of a bearing element which comprises dipping the body in molten solder consisting of lead and from 20% to 30% of tin and pouring the molten lead alloy against the soldered surface of the body."

The references relied upon in the final rejection of the product claims are:

Clamer, 909,869, January 19, 1909.
Mark et al., 1,155,317, September 28, 1915.
Klocke, 1,302,563, May 6, 1919.
Olsen, 1,302,584, May 6, 1919.
Pack et al., 1,333,337, March 9, 1920.
Shoemaker, 1,341,938, June 1, 1920.
Staack, 1,501,293, July 15, 1924.
Ripley, 1,684,146, September 11, 1928.
Shoemaker, 1,808,793, June 9, 1931.

Bearing Metals and Bearings, Corse, Am.Chem.Soc.Mon.No.53.

On the requirement of division, the following references were relied upon:

Olsen, 1,302,584, May 6, 1919.
Pack et al., 1,333,337, March 9, 1920.
Mcneely, 127,784, June 11, 1872.
Pike, 1,770,582, July 15, 1930.

At the time of the oral arguments in this court, counsel for appellant moved to dismiss the appeal as to appealed claim 7. The motion was granted, and the appeal dismissed as to that claim.

It will be observed that claim 2, which is illustrative of claims 8, 10, and 11, differs from claim 1, which is illustrative of claims 5, 9, 13, and 14, in that it defines the "bonding stratum between the body and facing comprising a reaction product of lead, tin, zinc chloride, and the metal of the body." The zinc chloride is used as a fluxing agent.

The references Pack et al., Klocke, Olsen, and Shoemaker, 1,341,938, each disclose a composite bearing in which the backing element and the facing element of bearing metal is attached by means of a bonding stratum of solder. The references Shoemaker, 1,808,793, Ripley, and the publication Corse, pp. 203 to 209, inclusive, disclose that a bearing metal consisting of a hardened lead alloy of the type used by applicant is old. The references Mark et al., Clamer, and Staack disclose that it is old to use zinc chloride as a fluxing agent.

We quote from the examiner's statement relative to his final rejection of the product claims, 1 to 11, inclusive, 13, and 14:

"* * * The references to Mark et al., Clamer and Staack, which are only necessary in the rejection of claims 2, 8, 10 and 11, are cited merely to show that the use of zinc chloride as a fluxing agent in soldering is old. It has been held that there would be no invention involved in taking an old and well known bearing metal, such as is shown by Corse, Ripley and Shoemaker, 1,808,793, and soldering it to a backing as taught by Olsen, Pack et al., Klocke or Shoemaker 1,341,938, using in this process an old and well known flux, see Mark et al., Staack or Clamer. It is noted that the claims 2, 8, 10 and 11, in setting forth that the bonding stratum comprises 'a reaction produce of lead, tin, zinc chloride and the metal of the body' merely describe the inevitable result of bonding a lead alloy to a backing with solder and using a zinc chloride flux. *As far as the exact type of solder is concerned, it is noted that so-called ordinary solder may consist of from 20% to 30% of tin. Ordinary solder is composed of tin and lead and is sold on the open market in compositions varying from 1 part tin, 25 parts lead to 6 parts tin and 1 part lead. The melting point of solder varies with the variation in tin-lead content and it is common practice to select a solder having a melting point suitable for the particular job. Applicant does not deny that solder having 20% to 30% of tin is old,* * * * [in fact, it is admitted by counsel for applicant in their brief that 'lead and tin solders with varying proportions of lead and tin, including 20%–30% tin,' were known prior to his invention.]" (Italics ours.)

"Zinc chloride is likewise an old and well known soldering flux, used extensively by the trade, and shown by each of the references to Mark et al., Clamer and Staack. When this flux is used it will form a reaction product with the solder as well as with the backing element to which the solder is applied. It is believed that the question as to the patentability of these claims resolves itself to this:

Did it involve invention for applicant to form a composite bearing of the type shown by Olsen, Pack et al., Klocke or Shoemaker 1,341,938; substituting for the usual babbitt a hardened lead alloy admittedly old in the art, and disclosed by Ripley, Corse and Shoemaker 1,808,793; selecting as a bonding medium an old solder and using in the soldering process an old fluxing agent? Clearly the substitution of the lead alloy for the babbitt is devoid of invention. While the soldering of this alloy onto the backing element may have presented problems due to the high melting point of the alloy, it is believed that the solution of such problems, in the manner used by applicant, would suggest itself to one skilled in the art of soldering. Certainly, if a solder of 50% tin is too fluid it is obvious to use one having a lower melting point. This expedient is resorted to daily in soldering operations. Likewise, the use of an efficient flux is within the range of mechanical skill. It is not seen that any unexpected result has been obtained by applicant or that the device, while admittedly useful, involves any patentable novelty in view of the art above discussed."

Subsequent to the examiner's statement of February 24, 1934, from which we have quoted, appellant, on May 8, 1934, filed an affidavit in which, among other things, it was stated that "it is a fact that the ordinary solder consisting of 50% tin and 50% lead will not absorb the calcium film, due to drossing, as *readily* as a solder containing 20% to 30% of tin and the balance lead." (Italics ours.)

In what is styled the "Examiner's Report, May 23, 1934," the examiner observed that it appeared from the affidavit, supra, that a solder consisting of 20 per cent. to 30 per cent. tin and the balance lead would absorb the calcium film, due to drossing, more readily than the ordinary solder consisting of 50 per cent. tin and 50 per cent. lead. The examiner then stated, in substance, that, assuming to be true all that was alleged in the affidavit, there was nothing therein to indicate that a solder containing 20 per cent. to 30 per cent. tin and the balance lead was critical as compared with proportions used in the prior art, that is, that there was nothing to indicate that such percentage produced a difference in kind, rather than in degree.

The Board of Appeals affirmed the decision of the primary examiner in all respects, and called particular attention to the fact that appellant's specification contains the statement that solder "containing" from "20% to 30% by weight of tin" gave "much more satisfactory results" than other solders, but did not state that ordinary solders would "not work."

Appellant filed a petition for rehearing, and, in connection therewith, an additional affidavit, wherein it was stated, in substance, that the percentage of from 20 per cent. to 30 per cent. of tin was critical, and that a solder containing substantially more or less of tin was practically useless.

In its decision on the petition for rehearing, the board adhered to its former views, stating, in substance, that the question of determining the proper solder to be used was merely a matter of experiment and research, and that regardless of the allegations made in the affidavit of appellant, his application contained no statement to the effect that the use of a solder containing 20 per cent. to 30 per cent. of tin was critical, as compared with proportions used in the prior art.

Relative to the rejection of appellant's product claims, counsel for appellant state in their brief that a composite bearing of the kind disclosed and claimed by appellant, although admitting that the separate elements were old, was unknown prior to appellant's application, and that appellant's discovery that "a calcium-lead alloy lining could be soldered to the body member by means of a lead-tin solder, if, but only if, a particular proportion was maintained between the tin and the lead of the solder, specifically a proportion of tin between 20% and 30%" involves invention. Counsel further state that if solder consisting of 50 per cent. tin and 50 per cent. lead "or other solder containing more than 30% tin were used, the bearings become loose at the crown or center portion." It is further argued by counsel for appellant that the primary examiner admitted that appellant's combination was new. That statement is correct, and it may be admitted in this discussion that appellant's combination, and the results obtained thereby, are new.

It is further contended by counsel for appellant that the prior art cited in rejection of the product claims, of which

claim 2 is representative, that is, the use of zinc chloride or its equivalent as a fluxing agent in combination with a solder, was nonanalogous art.

It is true that the patents to Clamer, Mark et al., and Staack relate to the formation of a thin lead coating on sheets, wires, or other metal articles. Nevertheless, they are cited to show that the use of zinc chloride as a fluxing agent *in soldering* is old. That the use of that particular element is old in solder, is conceded in the brief of counsel for appellant. Obviously, then, as solder is one of the vital elements involved in the appealed product claims, the prior art cited is not nonanalogous to that particular element of the combination, even though, as argued by counsel for appellant, a fluxing agent of the type used by appellant had not theretofore been used in a solder in a composite bearing element.

We ·are of opinion, as were the tribunals of the Patent Office, that the use of zinc chloride, or its equivalent, as a fluxing agent in the solder used by appellant as an intervening bonding layer between the backing member and the bearing metal, in view of· the prior art cited, involved nothing. more than the exercise of ordinary mechanical skill.

With reference to the product claims, of which claim 1 is illustrative, it may be said that, as stated by the Board of Appeals and the primary examiner, there is nothing in appellant's application to show that at the time it was filed he considered the use of from 20 per cent. to 30 per cent. tin in the solder used as an intervening bonding layer to be critical, that is, that such percentage of tin produced a product differing in kind, not merely in degree, from that disclosed by the prior art.

It is true, as hereinbefore stated, that appellant filed an affidavit subsequent to the original decision of the Board of· Appeals, wherein it was stated, in substance, that the percentage of from 20 per cent. to 30 per cent. of tin was critical, and that a solder containing substantially more or less of tin was useless.

It may be that the statements contained in appellant's affidavit are correct. However, the question of the patentability of the product claims here involved must be determined from the facts disclosed in appellant's application, rather than from those which are not in harmony therewith, and which are asserted, for the first time, in an affidavit of record.

In his application, appellant stated that ordinary solder containing 50 per cent. lead and 50 per cent. tin was not practical, because, he said, "its low melting point makes it too fluent under the high temperatures of the bearing metal so that it will tend to run off the backing member when the bearing metal is applied thereto, leaving too thin a film of solder"; that *"much more satisfactory results* are obtained by using a lead solder containing from 20% to 30% by weight of tin"; and that he had discovered that with articles of the type here involved "the *most effective solder* is that which consists of from 20 to 30% of tin and the balance lead; especially when used with a flux of a strongly corrosive character," such as concentrated zinc chloride solution. (Italics ours.) Nevertheless, appellant did not state in his application that the proportion of tin of from 20 per cent. to 30 per cent. by weight was critical, but contented himself with the statement that much more satisfactory results were obtained by the use of tin in the proportion mentioned. See In re Dreyfus, 73 F.(2d) 931, 22 C.C.P.A.(Patents) 830, and cases cited. Accordingly, we must hold that, in view of the facts of record, such problems as were presented to appellant, including the selection of the solder defined in the appealed product claims for an intervening bonding layer between the backing member and the bearing metal facing, were solved, not by the exercise of the inventive genius, but by ordinary mechanical skill, and that the tribunals of the Patent Office reached the right conclusion.

Relative to the question of division, we may say that, in view of the fact that the tribunals of the Patent Office held that the involved product, and the method for producing it, had each acquired a separate status in the art, as disclosed by the references cited, and as it was also stated that the product could be made by processes other than that defined in the method claims, which statement is not controverted by anything appearing of record, we must hold that the alleged invention defined in the process claims is separate from, and independent of, the claimed invention defined in the product claims, and that, ac-

cordingly, the requirement of division was proper. See In re Charles P. Wellman, 48 F.(2d) 926, 18 C.C.P.A.(Patents) 1214; In re Pedersen, 73 F.(2d) 928, 22 C.C.P.A. (Patents) 788.

With regard to the requirement of division in cases involving subcombinations, see In re Ferenci, 83 F.(2d) 279, 23 C.C.P.A.(Patents) ——, decided concurrently herewith.

As hereinbefore noted, the appeal as to claim 7 is dismissed.

As to the other appealed claims, the decision of the Board of Appeals, for the reasons herein stated, is affirmed.

Affirmed.