D. C.]                    Syllabus.

# IN RE MRAZ.

PATENTS; AMENDMENTS; RULES OF THE PATENT OFFICE.

1. An amendment of a rejected application for an improvement in preserving comestibles describing a composition consisting in part of an oxygenated solution, is properly rejected by the Commissioner of Patents as containing new matter not found in the original application, where it substitutes bone dust for such solution. (Following *Re Dilg*, 25 App. D. C. 9, and *Re Scott*, 25 App. D. C. 307.)

2. A rule of the Patent Office, promulgated by lawful authority, and not in conflict with any provision of law, has the force of a statute.

No. 678.   Patent Appeals.   Submitted January 10, 1911.   Decided February 6, 1911.

HEARING on an appeal from a decision of the Commissioner of Patents, rejecting an application for a patent. *Affirmed.*

The facts are stated in the opinion.

*Mr. Harlan Moore* and *Mr. Wm. E. Schoenborn* for the appellant.

*Mr. Robert F. Whitehead* for the Commissioner of Patents.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents, refusing to grant appellant, Franz Mraz, a patent for "improvements in formula and process for the preservation and packing of comestibles," an application for which was filed August 5, 1904. Applications had previously been filed for the same invention in Austria July 30, 1903, in France June 24, 1904, and in Germany July 16, 1904, those in France and Germany eventuating into patents.

In the original specification, appellant described his invention in the following manner: "To use the process, proceed as follows: Prepare a bath consisting of gelatin and glycerin which have been previously stewed in order to render them liquid; add a certain quantity of an oxygenated solution, suitably proportioned and harmless for the health, which solution mixes intimately to the mass, and allows it to resist humidity. That mass may as well be dyed with harmless colors. The object, dried by means of a cloth, is plunged in the bath, and is allowed afterwards to dry about thirty-six hours in a dry and airy space, and, if necessary, it is twice or three times more plunged in the bath; it is especially for objects containing much juice that it is necessary to repeat the operation. The coat thus produced is absolutely air-tight, and, at the same time, elastic. Moreover, it may be easily removed from the object itself, and the addition of the glycerin does away with the friability of the hardened gelatin. Gelatin and glycerin may be used in any proportion, but it has been ascertained that the best result was obtained in stewing and at the same time stirring energetically, so as to mix them well together, 2 parts of gelatin, 1 part of glycerin, and 1 part of boiled drinkable water. In order that the object plunged in the liquid may dry more rapidly, a fan or the smoke of small wood may be used. When the coat is completely dried, pass once or twice a sponge, soaked with an inoffensive oxygenated solution; by this means the coat is absolutely air and even water tight." The claims were drawn to the same subject-matter. In other words, the original ap-

plication described and claimed a composition consisting of gelatin, glycerin, and an oxygenated solution.

The claims originally filed were rejected on the ground that the application failed to give any example of an oxygenated solution. August 2, 1906, appellant amended his application by substituting for his original specification one which set forth that the "invention relates to a conservatory mass, and comprises a solution of gelatin, glycerin, and of selected bone dust as its chief compounds," and for the original claims, one covering this composition. Another specification was substituted July 22, 1907, which contained the following statement: "The improved substance is obtained essentially through the addition of bone meal to the glycerin and gelatin. Thereby is realized a considerably raised firmness of the coating. The bone meal, not being soluble in water, effects further a quicker drying of the gelatin without taking out of the meat, etc., the juices." The claim previously substituted was also erased, and the following inserted:

"1. A composition for enveloping or coating food products, comprising gelatin, glycerin, and bone meal.

"2. A composition for enveloping or coating food products, comprising 35 per cent of water, 50 per cent of gelatin, 14 per cent of glycerin, and 1 per cent of bone meal."

These claims were rejected by the Primary Examiner on the ground that the subject-matter thereof was not disclosed in the application as originally filed, and therefore constituted new matter. On appeal to the Board of Examiners-in-Chief, and then to the Commissioner, this decision was affirmed. From the decision of the Commissioner, the case comes here on appeal.

Appellant made the above amendment at a time when the period had long since expired within which he could file a new application. Rev. Stat. 4887, U. S. Comp. Stat. 1901, p. 946. The rights of the public had intervened. Hence, unless these claims can be considered as amendatory of the original application, he is precluded by his foreign applications, one of which covered the use of bone meal, from making the amend-

ment.   We agree with the Board of Examiners-in-Chief that
"the expression 'oxygenated solution,' used in the case original-
ly, covers something entirely different from bone meal, and even
. if it were held to generically include the latter, there is no
authority for allowing an applicant to include and claim a
specific thing not originally described, merely because it comes
within the scope of the genus before disclosed."

We are familiar with the rule of law urged by appellant
that, where expressions used are ambiguous, and the validity
of a claim is doubtful, a construction which will sustain the
claim, rather than one which destroys it, should be indulged
by the court.   But in all such cases there must be something
in the original application to suggest the claims set out in the
amendment.   It must not be new matter, nor an enlargement
of the original specification and claims.   *Hobbs* v. *Beach,* 180
U. S. 383, 45 L. ed. 586, 21 Sup. Ct. Rep. 409.

The amendment is clearly an attempt on the part of appel-
lant to insert new matter not found in the original application.
A careful examination of the original specification and claims
shows conclusively that the matter sought to be injected by the
amendment is foreign to the application upon which a patent
was first claimed.   A comparison of the specification and claims
in the two applications is convincing proof that one is not a
proper amendment of the other.   Judging from the language
of the original application, bone meal was an afterthought.   A
patent granted upon such an amended specification and claims
would be invalid.   The duty of the court in cases of this sort
is well expressed in *Chicago & N. W. R. Co.* v. *Sayles,* 97 U. S.
554, 24 L. ed. 1053, as follows:   "It will be observed that we
have given particular attention to the original application,
drawings, and models filed in the Patent Office by Thompson
and Bachelder.   We have deemed it proper to do this, because,
if the amended application and model, filed by Tanner five
years later, embodied any material addition to or variance from
the original,—anything new that was not comprised in that,—
such addition or variance cannot be sustained on the original
application.   The law does not permit such enlargements of

an original specification, which would interfere with other inventors who have entered the field in the meantime, any more than it does in the case of reissues of patents previously granted. Courts should regard with jealousy and disfavor any attempts to enlarge the scope of an application once filed, or of a patent once granted, the effect of which would be to enable the patentee to appropriate other inventions made prior to such alteration, or to appropriate that which has, in the meantime, gone into public use." This court has held that, where no foundation exists in the original application for the claims set up in the amendment, it is the duty of the Commissioner of Patents to reject them. *Re Dilg,* 25 App. D. C. 9; *Re Scott,* 25 App. D. C. 307.

Rule 70 of the Patent Office provides: "In original applications which are capable of illustration by drawing or model, all amendments of the model, drawings, or specifications, and all additions thereto, must conform to at least one of them as it was at the filing of the application. Matter not found in either, involving a departure from the original invention, can be shown or claimed only in a separate application." Under this rule it is incumbent upon an applicant to correctly describe his invention in the original application. The rule, promulgated by lawful authority, and not being in conflict with any provision of law, has the force of a statute, and must be obeyed. A failure, therefore, to comply with its terms, cannot be cured by amendment, but requires a new application, and this subjects the applicant to the risk of being barred by the statute. This is the situation confronting appellant, and no way is afforded by law or the rules of the Patent Office by which he can extricate himself.

The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify these proceedings, as by law required. *Affirmed.*