23 C.C.P.A.(Patents)

## In re CROWELL.
### No. 3648.

Court of Customs and Patent Appeals.
June 8, 1936.

See, also, 81 F.(2d) 402.

Milburn & Milburn, of Washington, D. C., Joseph F. Westall, of Los Angeles, Cal., and J. W. Milburn, of Washington, D. C., for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

There is here before us for review a decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner rejecting sixteen out of twenty-six claims of appellant's application for patent entitled, "For Well Cementing." The claims on appeal are numbered, respectively, 1, 5, 7, 9, 11, and 16 to 26, inclusive. These are divisible into four groups, 1 and 5 constituting the first group; 7, 9, and 11 the second; 16, 17, and 18 the third; and 19 to 26, inclusive, the fourth. The first, second, and fourth groups comprise method claims. All claims of the third group are for the device.

As illustrative of the respective groups, we quote Nos. 1, 7, 17, and 19:

"1. The method of cementing casing in a well bore, which includes circulating hydraulic fluid through the casing, and while retaining the hydraulic fluid in the casing to a level above that of normally closed ports in the side wall of the casing, opening said ports and closing the bore of the casing below said ports, and then establishing circulation downwardly through the casing and outwardly through said open ports."

"7. The method of cementing casing in a well bore, which includes discharging cement at the lower end of the casing by a column of hydraulic fluid retained in the casing in back of the cement and extending above a predetermined higher level at which additional cement is to be subsequently ejected, and then establishing circulation downwardly through the casing and outwardly therethrough at said higher level."

"17. In combination, a string of casing for a well bore having normally closed ports in its side wall and presenting an unrestricted open bore, the string of casing being adapted to retain a column of hydraulic fluid extending above the normally closed ports', and means adapted to be lowered in the casing and to by-pass said hydraulic fluid upwardly within the casing for opening the ports and closing the bore of the casing below the ports."

"19. The method of excluding water from oil wells which consists of lowering into the well and carrying, as drilling proceeds, a casing having a bore, which, is substantially unrestricted, said bore being provided with a plurality of lateral valve-controlled ports, securing circulation, preliminary to cementing, through the bottom of said casing, forcing a fluent cementing mixture downwardly through the bottom

of said casing and up into the space outside of the casing, closing off the bottom of the casing by a plug, and securing circulation through said lateral ports in said casing, closing off by a plug the bore of said casing below said lateral ports, and forcing a fluent cementing mixture downwardly through said casing and outwardly through said ports."

Three references were cited as follows: Crowell, 1,828,100, October 20, 1931; Halliburton, 1,860,669, May 31, 1932; Crowell, 1,828,099, October 20, 1931.

The claims of group 1 were rejected upon Crowell, 1,828,100; those of group 2 on Halliburton; those of group 3 on Crowell, 1,828,099; while those of group 4 were rejected as being predicated upon new matter not disclosed in the specification as originally filed. We shall consider them in the order named.

The opening paragraph of appellant's specification recites: "This invention relates to that method of cementing wells whereby cementitious material may be discharged from a casing string into a surrounding well bore, and additional cement may then be ejected from the casing string at a predetermined higher level so that the casing string may be cemented-off at predetermined levels or throughout any desired length; and it is an object of the invention to discharge the cement at different levels from a casing string which has an open bore of unrestricted cross-sectional area prior to the cementing operation, and which is adapted to be drilled-out to the same unrestricted bore subsequent to the cementing operation, so that a plurality of strings of minimum successive reduction in diameter may be received one within another for increasing the depth of the well while maintaining the bore of the casing of maximum size, and usual drilling operations may be continued through the casing, and fluid circulation established, all in accordance with present practice."

In the statement of the Examiner there is given a somewhat detailed description of appellant's device and method of operation as follows:

" * * * The casing has ports disposed at different levels and the ports are controlled by internal sleeve valves which operate within a recess in the pipe to normally keep the ports closed. These internal sleeve valves may be operated by sliding plugs which have expanding anchors which are of the desired length so that one plug fits only one recess and any one of the plugs is adapted to operate only one of the sleeve valves. The ports have also external back pressure valves. In order to perform a cementing operation the casing is lowered into the bore with the plurality of valve controlled ports closed and the bore may be washed by sending washing fluid through the inside of the casing into the bore and upwardly in the annular space formed by the casing and the bore. Upon completion of the washing operation a plug adapted to open the lower cementing port is placed into the casing, cement grout is placed on top of it, another plug is placed on top of the cement grout piston and the whole slug is driven downwardly within the pipe by hydraulic fluid pressure placed on top of the upper plug. The lower sliding plug passes all the sleeve valves which it does not fit but its anchors expand and set on the top of the lower sleeve and further pressure moves the sleeve valve, opening the ports and this piston closes the lower end of the casing below the valve. The pressure on the upper $x$ plug forces the cement grout through the open ports, forcing the external back pressure valves to open and finally when the cement is discharged the upper plug lands on top of the lower anchor plug, the back pressure valves close and so much cement is introduced into the bore. In this condition the casing above the upper plug is full of the hydraulic fluid and in order to introduce into the bore some additional cement through a port of an upper level it is necessary to do something to remove the hydraulic fluid above the ports of the upper level, the liquid between the upper ports and the already anchored plug need not be removed. In order to accomplish this applicant introduces a plug 4 (fig. 2) into the casing which is full of liquid; the plug has an upwardly opening valve 26 permitting the liquid to by-pass the plug as the latter is being pushed by a string of pipe. This plug is adapted to anchor itself upon the sleeve valve in the upper level opening the ports covered by the upper sleeve. Since the upper port is now open a slug of cement grout between two additional plugs may be introduced into the casing forcing hydraulic fluid out of these open ports at first, and then the cement, thus introducing additional cement. The casing may have more valve controlled ports at additional higher levels and the operations explained may be repeated until a high column of

cement is formed in the bore around the casing, each portion having been introduced separately. * * * "

In appellant's argument respecting claims 1 and 5 particular emphasis is placed upon the feature of a "by-pass through the plug," which plug, by reason of an upwardly opening valve that opens the "bore" of the plug, may be readily lowered, being forced downwardly by suitable means, through the hydraulic fluid in the casing "to its operative position alining with the corresponding ported section [of the casing] 2 and opening its sleeve valve 6."

It is urged that appellant's patent 1,-828,100, upon which claims 1 and 5 were rejected, shows only a solid plug disclosing "no by-pass through the plug."

We do not find in the specification at bar any use of the phrase "a by-pass through the plug" nor any use of the term "by-pass," but the drawings seem to disclose such a feature. However, whatever the specification and drawings may show in that respect, the *claims* themselves do not contain the feature in any form, and it would seem that appellant is insisting that a limitation which he did not himself express in the claims shall be read into them by the Patent Office or by this court. This court, following the principle announced by the Supreme Court of the United States in the case of McCarty v. Lehigh Valley Railroad Co., 160 U.S. 110, 16 S.Ct. 240, 40 L.Ed. 358, has again and again held that limitations not in the claims need not be considered. In the case of In re Buckwalter, 75 F.(2d) 515, 516, 22 C.C.P.A.(Patents) 1031, 1033, we said: "As has been so often said, the claim is the measure of the invention, and, if appellant's claims were so broadly drawn as to read upon the prior art, we know of no rule which would authorize the tribunals of the Patent Office, or the courts to read limitations, based upon extraneous arguments, into them."

We do not overlook appellant's argument to the effect that, because there is no by-pass in the plug of his patent, " * * * the hydraulic fluid is not retained in the casing while the plug is descending to perform its function of closing the bore of the casing below the ports. * * * " From this appellant would have us deduce that the language of claims 1 and 5, "while retaining the hydraulic fluid in the casing to a level above that of normally closed

ports * * * opening said ports and closing the bore of the casing below said ports," does not read on patent 1,828,100.

As to this, the brief for the Solicitor for the Patent Office points out that: "These claims do not say that *all* of the hydraulic fluid is retained in the casing. They merely call for having such fluid 'at a level above * * * ports,' *while* the ports are being opened and the bore closed. This seems clearly to be done in the reference, as explained by the examiner and the Board of Appeals." (Italics quoted.)

The Board of Appeals held, in effect, that the step of "establishing circulation downwardly through the casing and outwardly through said open ports" was broad enough to include the circulation of cement. Appellant insists that the circulation so alluded to refers only to the circulation of the "hydraulic fluid," and insists, in substance, that the expression should be given the meaning generally attributed to it in the art, and that, when so construed, the step "further defines the present improvement over the reference cited."

Here again appellant seeks to have a limitation which he did not himself expressly read into the claims. He might very easily have limited the claims to "hydraulic circulation," had he chosen so to do. We are not at liberty to do for him what he did not do for himself. In re Buckwalter, supra.

With respect to claims 7, 9, and 11, rejected upon the patent to Halliburton, the brief on behalf of appellant says: "Each of the claims in question call for, substantially, retention of hydraulic fluid in the casing above that of normally closed ports in the casing after expulsion of the cement, and then establishing circulation down through the casing and out through lateral ports."

It is then reiterated, in effect, that "establishing circulation" should be interpreted as limiting the step in which the term is used to "hydraulic circulation," and it is insisted that, under such interpretation, Halliburton not only does not disclose the subject matter of the claims, but expressly and repeatedly disclaims any pretense of accomplishing the *"result* sought to be patented in said claims." (Italics ours.)

As to the interpretation of the claims, we think no comment in addition to what already has been said is necessary. In the

specification of the Halliburton patent it is said: "Briefly stated, the method of the invention may be said to consist of the steps of alternately introducing predetermined volumes of a cementitious material and a hydraulic fluid into a casing, ejecting the lowermost volume of cementitious material from the casing into a well hole while retaining the hydraulic fluid immediately thereabove, and then ejecting the cementitious material next above said ejected volume into the well hole at a point above said retained volume of hydraulic fluid. In other words, the cementing of a long string may thus be accomplished as a step operation, the cementitious material being serially ejected into the annular space surrounding the casing at a plurality of vertically spaced points, such ejection occurring progressively. * * *"

The above seems to us to be a disclosure of steps which meet the claims at issue, interpreting them as we think they should be interpreted in the absence of any limitation therein to hydraulic circulation, and it is not essential that there should be found in Halliburton an apparatus for performing such steps. The claims are method claims comprising steps which Halliburton disclosed, and such disclosure is available as a reference, even though Halliburton may not have shown a method in detail.

In the case of Cohn v. United States Corset Company, 93 U.S. 366, 377, 23 L. Ed. 907, the Supreme Court said: "To defeat a party suing for an infringement, it is sufficient to plead and prove that the thing patented to him had been patented *or described* in some printed publication prior to his supposed invention or discovery thereof. Rev.Stat., sec. 4920 [35 U. S.C.A. § 69]." (Italics ours.)

Another case regarded as in point is that of In re Wright, 34 App.D.C. 199. See, also, In re John W. Marden and Harvey C. Rentschler, 48 F.(2d) 428, 18 C.C. P.A.(Patents) 1119. And In re Fink, 62 F.(2d) 103, 20 C.C.P.A.(Patents) 716, with their respective citations.

Of the product claims 16, 17, and 18, rejected upon appellant's patent 1,828,099, the brief on behalf of appellant says: "Function, mode of operation, and result of the plug of applicant's said prior patent and that of the present application are entirely different. * * *"

It seems sufficient to say that as to these claims we are not concerned with function, mode of operation, or result, but with structure. In re Arthur B. Modine, 57 F.(2d) 355, 19 C.C.P.A.(Patents) 1058; In re Laursen, 73 F.(2d) 648, 22 C.C.P.A. (Patents) 744; In re Beplate et al., 77 F. (2d) 506, 22 C.C.P.A.(Patents) 1232. Appellant does not convince us that the claims contain structural limitations which distinguish them from his patent upon which they were rejected.

In each of the fourth group of claims (19 to 26, inclusive), is found the step of lowering a casing into a well and *carrying the casing* as the drilling proceeds. This step was held not to have been disclosed in appellant's specification as originally filed; so the claims were rejected for that reason, cancellation of the amendments to the specification by which it was disclosed being required by the Examiner.

Appellant insists that it *was* disclosed in his original application, and the brief states, " * * * we do not rely upon any amendment made during the prosecution as support for said claims 19 to 26 calling for carrying the casing."

To support the contention of original disclosure appellant directs attention to figures of his drawings and to the use of the phrase "usual drilling operations" at different places in his specification. For example, it is said in the specification: "The bore of the string [of casing] being thus unrestricted throughout its length, usual drilling operations may be carried on through the string and fluid may be circulated in usual manner. * * *"

And again: " * * * Usual drilling operations may be continued through the casing, and fluid circulation established, all in accordance with present practice."

In other words, in order to find disclosure of "carrying the casing" in appellant's application as first filed, it is necessary to construe the phrase "usual drilling operations," in the connections in which used in the specification, as embracing carrying the casing. That such deduction fairly might be drawn is not an unreasonable contention, since it might be assumed that it is customary to carry the casing downward as the drilling progresses. On the other hand, however, there might be a different practice and, in our opinion, the statutory requirement (R.S. § 4888 [35 U. S.C.A. § 33]) for "a written description * * * in * * * full, clear, concise, and exact terms" is not properly met by terms capable of different constructions;

nor does it meet the requirement of rule 70 of the Patent Office, the validity of which was upheld long ago by the Court of Appeals of the District of Columbia, in the case of In re Mraz, 36 App.D.C. 435.

The rejection of this group of claims upon the ground of new matter we regard as proper.

It is pointed out in the brief for appellant that the Board of Appeals did not directly pass upon the Examiner's requirement for cancellation as constituting new matter of certain amendments to the specification. This seems to be true, but, since the amendments express only what was specifically rejected as new matter in the claims, definite discussion of the point was not essential, and it necessarily follows, we think, that the general affirmation by the Board of the Examiner's decision embraced the Examiner's ruling on this issue.

We are not convinced of error in the decision of the Board of Appeals, and the same is affirmed.

Affirmed.