29 C.C.P.A. (Patents)

## In re PATTON.

Patent Appeal No. 4637.

Court of Customs and Patent Appeals.
April 27, 1942.

Rehearing Denied June 12, 1942.

Ross Cummings Patton, pro se.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all of the claims, Nos. 1, 7, 8, 10, and 12, in appellant's application for a patent for an alleged invention relating to improvements in fire-fighting apparatus for use especially as mobile fleets of self-propelled and trailer fire-fighting units in "intracity, intrastate, interstate and national, fire protective system against aircraft attack."

Division was required between claim 10 and the other appealed claims. Appellant elected to prosecute appealed claims 1, 7, 8, and 12, claim 10 being retained in the case, however, for the purpose of challenging the requirement for division. Claims 1, 7, 8, and 12 were rejected for want of patentability in view of the prior art cited. Claim 12 was also rejected for the reason that, as stated by the Primary Examiner, it is "drawn to cover an aggregation of a fire fighting vehicle and an electric power supply outlet system."

The appealed claims read:

"1. The combination, in a unified mobile, intracity, intrastate, interstate and national, fire protective system against aircraft attack, but suitable for general use; utilizing a conventional type self propelled chassis, electric motor driven pressure pump, combination chemical and service hose lines; also, an electric cable and reel with suitable end plug, for making connection to independent or interlocking, intracity, intrastate, interstate and national, electric power transmission supply lines."

"7. The combination, in a fire protective system for national defense, against aircraft attack; of standardized, detachable, self propelled units and trailer units; utilizing the principle of mobile batteries or fleets, and extra trailers, adapted to function as a unit of the army.

"8. In a fire protective system against aircraft attack; the combination, of a multiple-unit, self propelled and trailer apparatus, mounting an electric motor driven rotary or centrifugal pump; receiving energy from external source or junction boxes of conventional type; from independent or interlocking power transmission supply lines on the highway or underground; both the self propelled and trailer apparatus being equipped with separate and independent power pumps and hose lines; the trailers being also equipped with power driven winches."

"10. In a fire protective system against aircraft attack or other catastrophe; the combination, an intracity, intrastate, interstate and national system of conventional type electric outlet or junction boxes, mounted on conventional type transmission poles, or in combination and integral with conventional type fire hydrants, for overhead or underground connection to independent or interlocking power transmission supply lines."

"12. In a comprehensive, national defense, protective fire system against aircraft attack or other catastrophe; the combination, of independent. cruising or mobile fleets of self propelled and trailer fire fighting units; stragetically [strategically] and geographically located in stations or barracks, to admit of rapid shift and concentration upon bombed cities or establishments; a national system of uniform electric power supply outlets or junction boxes of conventional design, for delivery of electric energy of a uniform potential or voltage, to the electric driven rotary or centrifugal pumps mounted upon the self propelled and trailer units; a national system of interchangeable fire hose coupling and electric power connections, to interchange with existing apparatus; a complete, independent auxiliary fire protection system for the national defense, with radio equipped units, adapted to function as a unit of the army in time of war."

The references are:

| | | | |
|---|---|---|---|
| Cox, | 588,399, | Aug. | 17, 1897; |
| Whiting, | 632,665, | Sept. | 5, 1899; |
| Whitlock et al., | 670,943, | Apr. | 2, 1901; |
| Eisenbise, | 846,835, | Mar. | 12, 1907; |
| Farrand, | 1,081,224, | Dec. | 9, 1913; |
| House, | 1,357,982, | Nov. | 9, 1920; |
| House, | 1,427,899, | Sept. | 5, 1922; |
| Fletcher, | 1,490,373, | Apr. | 15, 1924; |
| Rumble, | 1,637,090, · | July | 26, 1927. |

Claims 1, 7, 8, and 12 were rejected by the Patent Office tribunals on the patents to Whitlock et al., Eisenbise, and House (No. 1,357,982). The other references were cited, according to the Primary Examiner's statement to the Board of Appeals, "for the purpose of showing the line of division as indicated by office classification between the distinct and separate inventions claimed in the case," that is, the separate classification of the fire extinguishing apparatus defined in claims 1, 7, 8, and 12 on the one hand, ·and the electric outlets for an electrical distribution system (defined in claim 10) on the other.

 It appearing from the record that the subject matter of claim 10 is separately classified in the Patent Office from that of appealed claims 1, 7, 8, and 12, and as there is no such dependent relationship existing between the subject matter defined in claim 10 and that defined in the other appealed claims as to warrant the inclusion of the subject matter of claim 10 in the same application with the subject matter defined in the other appealed claims, as held by the tribunals of the Patent Office, the requirement for division was proper. See In re Ferenci, 83 F.2d 279, 23 C.C.P.A., Patents, 1023; In re Shoemaker, 83 F.2d 288, 23 C.C.P.A., Patents, 1033; In re Burns, 83 F.2d 292, 23 C.C.P.A., Patents, 1091; In re Goerke et al., 83 F.2d 294, 23 C.C.P.A., Patents, 1093.

The patent to Whitlock et al. relates to a combined electric fire-engine and hose-carriage designed to be drawn by horses, and discloses an electrically driven pump, an electric motor for driving the pump, means for carrying fire-hose, and a reel upon which an electric cable is wound. The patent also discloses outlet boxes (into which the electric cable is designed to be plugged) mounted on poles. The electric current is supplied by overhead wires. Although the patentee makes no mention of the fact that his combination is adapted to be used as a trailer, the Board of Appeals, in its decision, and the Solicitor for the Patent Office, in his brief, state that the patentee's vehicle is adapted to be so used.

The patent to Eisenbise relates to improvements in "automobile fire apparatus," and discloses fire-fighting apparatus mounted on an automobile chassis and an "automobile hose-wagon detachably coupled" to such chassis. The hose-wagon is designed to carry fire-hose which, according to the patentee, is "permanently connected to the effluent nozzle of the engine-hose, the purpose being to deliver both vehicles at their destination at the same time, and then by uncoupling the hose-wagon from the engine-vehicle the wagon can proceed to position independently of the engine and play out the hose as it progresses." The power-driven hose-wagon, according to the patentee's disclosure, is detachably coupled to the front end of the power-driven fire-engine.

With reference to that patent, the Primary Examiner stated that it discloses broadly a self-propelled fire truck having conventional fire-fighting equipment and detachably connected to the front thereof an auxiliary truck to carry the fire-hose and additional fire-fighting equipment.

The patent to House (No. 1,357,982) relates to "motor fire engines," and discloses an automobile truck on which is mounted a chemical tank for holding chemical fire extinguishing liquid, a mechanically driven water pump, and other fire-fighting apparatus. The patentee also provides the necessary connections between the water pump and the chemical tank and chemical hose for flushing the chemical tank and chemical hose with water. With reference to such connections, the Primary Examiner stated that the patentee's pump "is adapted either to pump the chemical fire extinguishing liquid from the tank * * * onto a fire or to pump water from an external source to its discharge conduit." The board's interpretation of that feature of the patentee's disclosure was that provision had been made for utilizing the pump "for alternatively distributing the chemical fluid or water from some suitable source of supply."

Claim 1 was rejected by the Primary Examiner on the patent to House (No. 1,357,-982) in view of the disclosure in the patent to Whitlock et al.

In his statement to the Board of Appeals, the examiner stated that claim 1 "recites nothing more in structure than a fire truck having a pressure pump [electrically driven], hose lines, an electric cable with an end plug and a reel for the cable," and that no invention was involved in substituting the electrically driven pump and the equipment necessary to drive it, disclosed in the patent to Whitlock et al.,

for the mechanically driven pump disclosed in the patent to House.

Claim 7 was rejected by the Primary Examiner on the ground that it defined nothing more than a fire truck and detachable trailer units, disclosed in the patent to Eisenbise, the examiner being of opinion that it was a matter of choice as to what particular equipment should be carried by the trailer units. Claims 8 and 12 were rejected by the examiner on the patents to Whitlock et al. and House (No. 1,357,982) in view of the patent to Eisenbise. Claim 12 was further rejected by the examiner on the ground that it is "drawn to cover an aggregation of a fire fighting vehicle and an electric power supply outlet system." In this connection, the examiner said:

"It is not seen that the fire truck cooperates with the electric system so as to form a patentable combination for the reason that neither of these structures in its normal operation modifies the operation of the other, but merely acts to perform its normal function.

&ast; &ast; &ast; &ast; &ast; &ast;

"In response to the examiner's rejection of the claims on their merits the appellant admits that certain of the electrical and mechanical apparatus which are incorporated in his device is conventional *but contends that he has invented a nationally operated system of fighting fires, that is, a system of fighting fires wherein the various parts of the fire fighting equipment are standardized and interchangeable. It is not believed that a fire fighting system, per se, is a proper subject matter of a patent, but that novelty must reside in the particular structure of the fire fighting apparatus that comprises the fire fighting system. Furthermore, there is not seen to be any invention in the assembling of standard and interchangeable parts in the applicant's device for the reason that in the present system of mass production most articles of manufacture are made of standard size and interchangeable to effect economy and convenience."* (Italics ours.)

In its original decision holding that claims 1, 7, 8, and 12 were not patentable in view of the disclosures in the patents to Whitlock et al., Eisenbise, and House (No. 1,357,982), the Board of Appeals stated that those claims were "directed to a composite of apparatus and system which is in the nature of an aggregation, insofar as mechanism is concerned, combined with a system of procedure for which the patent laws make no provision. From an apparatus standpoint, the claims elected [appealed claims 1, 7, 8, and 12] include some form of transporting means; either a vehicle provided with power of its own or a trailer, either or both of which may carry a miscellaneous collection of fire-fighting apparatus. Neither vehicle is designed to furnish the pumping power required, but this is to be derived from a system of electrical distribution which may alternatively involve outlets supplied from an overhead system and carried by the poles which support the distribution line or outlets carried by hydrants and supplied with current from an underground system."

In reply to appellant's request for clarification of the statement in its original decision that the structure called for by the appealed claims was "combined with a system of procedure for which the patent laws make no provision," the board stated that in a broad sense appellant's plan of combating fires, set forth in those claims, was in "the nature of a plan of doing business and not an 'art' within" section 4886 of the Revised Statutes, 35 U.S.C.A. § 31, which provides for the granting of patents to those who have invented or discovered "any new and useful art, machine, manufacture, or composition of matter."

Claims 1, 7, 8 and 12 call for fire-fighting apparatus adapted to be used either locally or throughout the United States.

Appellant contended before the tribunals of the Patent Office and contends here that the appealed claims are patentable because they provide for a novel "interstate and national fire-fighting system to combat mass aircraft, incendiary-explosive bombing attack"; that such a system was "the essential aim" of appellant's alleged invention; that his system has been utilized by the United States Government, the city of New York, and manufacturers unknown to appellant; and that it has practical application.

In this connection it is sufficient to say that a system of transacting business, apart from the means for carrying out such system, is not within the purview of section 4886, supra, nor is an abstract idea or theory, regardless of its importance or the ingenuity with which it was conceived, apart from the means for carrying such idea or theory into effect, patentable sub-

ject matter. In re Moeser, 27 App.D.C. 307; Hotel Security Checking Co. v. Lorraine Co., 160 F. 467; Berardini v. Tocci, 2 Cir., 200 F. 1021; In re Thomas J. Dixon, 44 F.2d 881, 18 C.C.P.A., Patents, 711. See, also, In re McKee, 64 F.2d 379, 20 C.C.P.A., Patents, 1018; and In re Lockert, 65 F.2d 159, 20 C.C.P.A., Patents, 1125. Accordingly, the question here presented is whether the structure defined in appealed claims 1, 7, 8, and 12, for carrying out appellant's fire-protective system against aircraft attack, involves invention in view of the disclosures in the patents to Whitlock et al., Eisenbise, and House (No. 1,357,982). In re Crowell, 84 F.2d 206, 23 C.C.P.A., Patents, 1246, and cases therein cited.

Claim 1 calls for a conventional type, self-propelled chassis, an electric motor pressure pump, "combination chemical and service hose lines," and an electric cable and reel. All of the elements called for by this claim, with the possible exception of the element "combination chemical and service hose lines," are disclosed in the patents to Whitlock et al. and House (No. 1,357,-982), and, so far as those elements are concerned, we are in full accord with the statement of the Primary Examiner that it would not involve invention to substitute the electrically driven pump and the equipment necessary to drive it, disclosed in the patent to Whitlock et al., for the mechanically driven pump disclosed in the patent to House.

Relative to the element "combination chemical and service hose lines," appellant stated in his brief before the Board of Appeals, and has reiterated the statement here, that neither the pump disclosed by him nor the pump disclosed in the patent to House was designed to pump chemicals onto the fire, and that the statement in the board's original decision that the pump disclosed in the House patent was designed to be utilized for "alternatively distributing the chemical fluid or water from some suitable source of supply" is not in accordance with the House disclosure.

Appellant states in his application that the chemical tank in his fire-fighting apparatus is provided with a separate hose line, and that by a suitable arrangement of pipes and valves the chemical hose line may be either connected to the chemical tank or to the discharge side or intake side of the water pump. Claim 1 does not call for any such pipe and valve arrangement, and we are not permitted to read such a limitation into it. In re Buckwalter, 75 F.2d 515, 22 C.C.P.A., Patents 1031; In re Crowell, supra.

Furthermore, although the patentee House provides pipe and valve connections between his pump and chemical tank for the purpose of using water to flush them and although nothing is said in his patent about using his chemical hose for a combination chemical and service hose, it is obvious that it could be so used, although the utility of such use is doubtful.

Owing to the fact that we are here concerned with structure, not function, mode of operation or results, we are unable to hold that the element "combination chemical and service hose lines" lends patentability to claim 1.

Claim 7, as hereinbefore noted, was rejected by the Primary Examiner on the ground that it calls for nothing more than a fire truck and detachable trailer units, disclosed in the patent to Eisenbise, and claims 8 and 12 were rejected by the examiner on the patents to Whitlock et al. and House (No. 1,357,982) in view of the patent to Eisenbise.

As hereinbefore noted, the patent to Eisenbise discloses, among other things, fire-fighting apparatus mounted on an automobile truck, and an automobile hose-wagon detachably coupled to the front end of, and propelled by, such truck. Obviously, either of those vehicles could be equipped to carry any fire-fighting apparatus. Although, strictly speaking, the patentee does not disclose a trailer, that is, a vehicle which is in the rear of, and is pulled by, another vehicle, his disclosure is sufficient, we think, to suggest to one skilled in the art (if any suggestion was necessary at the time—September 20, 1938—appellant filed his application) that a trailer might have utility as one of the units in fire-fighting equipment.

We have given careful consideration to the arguments presented here by appellant, but are unable to hold that the appealed claims define patentable subject matter over the references of record.

The decision of the Board of Appeals is affirmed.

Affirmed.