22 C. C. P. A. (Patents)

### In re COLLINS.

Patent Appeal No. 3451.

Court of Customs and Patent Appeals.

March 25, 1935.

Albert T. St. Clair, for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office, affirming that of the Examiner in rejecting claims 32 to 55, inclusive, of an application for patent relating to alkyd type resins. All the claims in the application are product claims except process claims 42, 43, 44, 50, and 51. Claims 40, 41, 45, 46, 54, and 55 contain certain modifications not found in the other claims and, as was evidently true before the Board, appellant has not argued with much insistence that the rejection of the same was erroneous. Claims 32, 47, 50, and 55 are illustrative and follow:

"32. An alkyd type resin formed by the combination and condensation of a mixture containing an organic polybasic acid, glycerine, ethylene glycol, and di-ethylene glycol.

"47. An alkyd type resin formed by the combination and condensation of a mixture containing phthalic anhydride, glycerine, ethylene glycol and di-ethylene glycol, and less than 50 per cent of a fatty acid modifier.

"50. The process of producing the herein described resinous product, which comprises heating a mixture containing an organic polybasic acid, a polyhydric alcohol, ethylene glycol, a poly-ethylene glycol and a fatty acid.

"55. An alkyd type resin formed by the combination and condensation of a mixture containing phthalic anhydride, ethylene glycol, glycerine in an amount less than that of the ethylene glycol, and a fatty acid."

These claims were copied by appellant from the patent to Pieper, No. 1847783, of March 1, 1932, for the purpose of interference. The claims were all rejected upon the ground of want of disclosure of the subject-matter in the application as filed. The Board, in considerable detail, which we need not repeat here, has copied from the Pieper specification his teachings which fully disclosed the subject-matter of the involved claims, and we think has pointed out, as also did the Examiner, the particulars in which appellant's disclosure is deficient.

The appellant in this court quotes the following from his specification, "By the term 'polyhydric alcohol-polybasic acid resin', as used herein, I mean the resinous condensation product resulting from the interaction of one or more polyhydric alcohols and one or more polybasic acids, with or without one or more modifying ingredients. * * * Although the above examples are limited to the use of glycerol and ethylene glycol as the polyhydric alcohol, phthalic anhydride, succinic acid and maleic acid as the polybasic acids, and linseed oil acids, Chinawood oil acids, castor oil acids and rosin as the modifying ingredients, I desire to have it understood that the invention is applicable generally to the other members of these classes, such as polyethylene glycol, pentaerythrite, citric, fumaric, adipic, butyric, oleic and stearic acids, cocoanut oil acids and perilla oil acids, and to all synthetic resins falling within the above definition of modified polyhydric alcohol-polybasic acid resins, * * *" and relies upon this, together with his six examples, which are set out in the specification, as amounting to a disclosure sufficient to support the claims at bar.

It will be noticed that claim 32, like most of the other claims, calls for a definite combination and condensation of a mixture of certain definitely named materials. For instance, said claim 32 calls for a combination with an organic polybasic acid of three definitely named materials—glycerine, ethylene, glycol and di-ethylene glycol. None of the examples given sets out a combination of two or more alcohols. Appellant argues here that he has broadly covered this combination of elements by his above-quoted statements in his specification.

The decision of the Examiner and that of the Board rejecting the claims are based chiefly upon the proposition that one cannot support his specific claims of definite mixtures of definite materials upon a disclosure which teaches the use in no particular quantities or of no definitely named ingredient by broadly naming the group in which the claimed ingredients may be found. The Solicitor for the Patent Office illustrates appellant's position as being comparable to that of an applicant for mechanical patent who would disclose a list of mechanical elements as gears, levers, cams, bolts, etc., and state that they could be combined in combinations of twos, threes, fours, etc., as desired and then argue that the skilled mechanic could make the combination, and that the alleged

inventor who first mentioned that those elements could be combined in the manner stated should be regarded as the first inventor.

On this phase of the case, the Examiner made the following pertinent statement:

"Counsel argues that in view of the language quoted above applicant originally intended to cover resins in which more than one polyhydric alcohol was used, and that applicant is unquestionably entitled to a claim which calls for the use of the specific alcohols, glycerol, ethylene glycol and polyethylene glycol. However, the evidence of such intention was lacking in the case as filed for neither in the objects of invention nor in the original claims is there found any reference to the use of mixtures of polyhydric alcohols. At the most, the specification treats the various alcohols mentioned in the portions quoted as equivalents and that any one of them may be substituted for those specifically mentioned in the examples. Moreover, if counsel's argument be carried to its logical conclusion, applicant would also be entitled to claim resins in which more than one polybasic acid was used with a single polyhydric alcohol or with mixtures of polyhydric alcohols, and also various combinations and permutations of these ingredients. To permit an applicant to lay claim to such specific products on the basis of an indefinite general statement would appear to be flying in the face of that portion of the Statute which requires an applicant to 'set forth the precise invention for which a patent is solicited, and explain the principle thereof and the best mode in which the applicant has contemplated applying that principle.' Applicant's specification fails to meet this statutory requirement; and, as stated by the Court of Appeals of the District of Columbia in Lindley v. Shepherd (1928) 58 App. D. C. 31, 24 F.(2d) 606, 'it is not enough that he (the applicant) may have had a conception of the invention he seeks to appropriate. His application must disclose it.'"

And with reference to certain of the claims stated:

"Obviously, applicant neither discloses nor even suggests the specific ratio of the ethylene glycol to the other polyhydric alcohols set forth in claims 45, 46, 54 and 55. No real contention has been made by counsel as to applicant's right to make these claims. Clearly applicant's specification lacks any basis for this specific invention, for even a broad general statement is no warrant for specific claims particularly in

view of the fact that the mixture of alcohols in the ratios mentioned yield special and peculiar results."

The Board of Appeals, speaking of appellant's specification and contentions, said:

"So far as we can see, the specification treats the various alcohols mentioned as equivalents, that any one of them may be substituted for those specifically mentioned in the examples. The patentee on the other hand, has selected certain alcohols to combine and for definite results which he sets forth clearly in his specification. We do not feel that appellant is therefore entitled to spread the scope of his alleged invention to a degree not clearly indicated in his original disclosure and where improved results are obtained by certain selections of the ingredients, not taught by him in his specification. As the Examiner states, if we should agree with appellant's contention, applicant would be entitled to claim resins in which more than one polybasic acid is used with a single polyhydric alcohol or with mixtures of polyhydric alcohols and also various combinations and permutations of these ingredients. Obviously, in such situation any alleged invention would not be properly presented. While it is recognized that appellant should not be called on to indicate all the various combinations of the ingredients coming within the range of his invention, yet where the question of equivalency does not arise, it seems necessary that the advantages of selected combinations of the ingredients be taught in order that the scope of the invention be clearly defined."

We are in accord with the views expressed by the Board. Appellant, in order to be entitled to make the specific claims at bar, may not rely upon his disclosure which does not point out his specific invention with more particularity than is shown in the above matter quoted from his specification. New and useful results, according to the inventor Pieper and the Patent Office tribunals, resulted from the particular combinations made by Pieper, which combinations were of ingredients selected from the broad field referred to by appellant. Appellant, under the circumstances of this case, cannot pre-empt the entire field of useful inventions such as were claimed by Pieper by broadly teaching that useful results may be obtained by mixtures and combinations of a broad general group of materials without specifically naming such materials or by teaching the order of the combination, or the quantity of ingredients used, or in some

other manner pointing out his invention as is required by statute "in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, and use the same." Rev. St. § 4888, section 33, title 35, U. S. C., 35 USCA § 33.

On this phase of the case we think In re Mraz, 36 App. D. C. 435, is particularly pertinent. There the applicant's original application called for a "composition consisting of gelatin, glycerin, and *an oxygenated solution.*" (Italics ours.) The claims were originally rejected on the ground that the applicant failed to give any example of an oxygenated solution. He then sought to amend his application by naming one oxygenated solution—bone meal. The court held that he had not originally disclosed bone meal and that his amendment was new material, and said:

" * * * We agree with the Board of Examiners-in-Chief that 'the expression "oxygenated solution," used in the case originally, covers something entirely different from bone meal, and even if it were held to generically include the latter, there is no authority for allowing an applicant to include and claim a specific thing not originally described, merely because it comes within the scope of the genus before disclosed.'

"We are familiar with the rule of law urged by appellant that, where expressions used are ambiguous, and the validity of a claim is doubtful, a construction which will sustain the claim, rather than one which destroys it, should be indulged by the court. But in all such cases there must be something in the original application to suggest the claims set out in the amendment. It must not be new matter, nor an enlargement of the original specification and claims. * * * * * *"

Claims 40, 41, 45, 46, 54, and 55 contain limitations such as "and ethylene glycol in an amount greater than that of either the glycerine or the poly-ethylene glycol" and "glycerine in an amount less than that of the ethylene glycol," and it is not very seriously contended by appellant in this court that his disclosure forms a sufficient basis for the allowance of such claims. Claim 47 has the limitation "and less than 50 per cent of a fatty acid modifier." Obviously, the invention in these claims rests in the particular limitations placed in them, and this fact, we think, illustrates the fallacy of the contention that appellant's broad and indefi-

nite disclosure was for the same invention which these definite claims call for.

Appellant, after the Board's decision, filed an extended petition for rehearing in which he complained there, as he complains here, that the Board's decision would require an inventor to set out examples of every mixture which fell within the scope of his broad invention and that would entail such work, both on the part of the inventor and the Patent Office tribunals, as to bring about a result not contemplated by the patent laws and a practice which should be regarded as very dangerous. It is pointed out by the applicant that there are many instances in which an inventor may designate as one of the ingredients of his combination a group, any members of which are equivalents, and that if the decision of the Board is approved, such a practice cannot be resorted to in the future. Appellant also urges that if his application had resulted in a patent and Pieper was a pending applicant before the Patent Office, the office would reject Pieper on applicant's patent, and argues from that premise that the applicant has disclosed what Pieper has disclosed and claimed.

To the first contention the Board made the following reply:

"Appellant also urges that if it be necessary to have specific examples to warrant the making of a claim calling for specific elements when several examples have been given with the broad classes including these elements, that it would be necessary in chemical cases to present hundreds of examples in order to insure applicant's right to make specific claims on each combination they have disclosed. As stated previously, we have no intention and had none at the time of our decision of setting down any definite rule to be followed. We passed on the circumstances of the present application and held that the present disclosure is, in our opinion, insufficient basis to support the claims copied from the patent to Pieper."

As to the second contention, the Board replied:

"This reasoning seems fallacious to us inasmuch as in an interference between two parties, they must claim substantially the same patentable subject matter. On the other hand, in rejecting an application on a patent, it is not necessary that the patented disclosure or claims be the same as to subject matter as in the application. It is often the practice to reject on the ground that the differences in the disclosures of a patentee and an applicant indicate no special step forward in the art and therefore there is no patentable distinction presented and in this connection reference may be made to a second patent to support this position."

We are in accord with the decision of the Board in rejecting the claims for want of disclosure, and it is affirmed.

Affirmed.