28 C.C.P.A. (Patents)

## In re GEBAUER--FUELNEGG et al.

### Patent Appeal No. 4490.

Court of Customs and Patent Appeals.

July 2, 1941.

Zabel, Carlson, Gritzbaugh & Wells, of Chicago, Ill. (Edward C. Gritzbaugh and Foster York, both of Chicago, Ill., of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner rejecting all of the claims of an application for a patent for certain new and useful improvements in a "Transparent Sheet Material and Coating Therefor." The claims are directed to a product and a process of manufacturing the same.

Claims 33 to 35 inclusive, 45 to 47 inclusive, 67 and 68 were rejected on the ground that they are not supported by sufficient disclosure in the application as filed. Claims 36 to 43 inclusive were rejected as involving new matter.

Claims 33 and 41 are illustrative and read as follows:

"33. A thin flexible sheet material coated with a moisture resistant, adherent and heat sealing composition which is non-tacky at ordinary temperatures comprising a major proportion of a rubber resin (pliolite), and a minor proportion of a substance from the group consisting of cumarone, chlorinated diphenyl, vinyl resin and dammar."

"41. The method of making meltable wax-like compositions which comprises mixing at least 20% by weight of wax with a

condensation derivative of rubber obtainable by decomposing with water a product obtained by treating rubber in solution with chlorostannic acid or a halide of amphoteric metal."

The examiner described the claimed invention as follows: "The alleged invention relates to the production of coated sheet material. The sheet material which is to be coated may be made of cellulose, cellulose derivatives, proteins, derivatives of proteins or gelatine. The composition employed to coat the sheets is described in the original specification as a type of resin derived from rubber; two forms of which it is stated are now on the market and are known as plioform and pliolite. The use of wax and natural or artificial resins such as dammar, elemi, vinyl resins etc. with the rubber resin is also contemplated. These two classes of materials serve respectively to decrease vapor transmission through the coating and give greater adhesion of the coating to the base sheet."

In the first office action, a letter dated July 11, 1933, the examiner stated: "The claims are all rejected as being indefinite and as being based upon an insufficient disclosure. The term 'rubber resin' is indefinite. The obvious meaning of the term is a resin extracted from rubber in the preparation of resin free rubber. Plioform and pliolite appear to be trade names and it is not known what the substances are. The applicants have not disclosed their compositions or how they may be prepared and a verified showing identifying the substances and that they were known to the trade as plioform and pliolite at the time of filing the application is required."

On January 2, 1934, in response to the said office action, appellants tendered an amendment to the application describing "pliolite" and "plioform," including a method of preparing the same. On that date appellants also submitted a photostatic copy of page 41 of a publication known as Industrial and Engineering Chemistry, dated February 10, 1933, to show that "plioform" was a product of the Goodyear Tire & Rubber Company and that it was "on the market" prior to the filing date of the application. On January 18, 1934, appellants submitted a supplemental amendment cancelling the amendment of January 2, 1934, and submitting further details as to the method of making "pliolite" and plioform." The supplemental amendment was accompanied by an affidavit of the appellant Gebauer-Fuelnegg in which the affiant stated: "* * * that prior to the filing of said application, he procured from Goodyear Tire & Rubber Company a product identified by that company as 'Plioform Molding Powder' and 'Pliolite Resin'; that the products identified by said trade names were used by him and the other joint inventors in the above identified application in carrying out the invention described and claimed in said application; that said products were known to the trade by said trade names, respectively, and were available on the open market prior to the filing of said application; that to the best of his knowledge and belief, the description of the process for the preparation of said products pliolite and plioform, as contained in the accompanying amendment in said application, is true and correct."

The examiner, in office action dated April 24, 1934, refused to accept the identification of the trade terms as tendered by appellants.

On October 22, 1934, appellants tendered another amendment to the specification, containing a more detailed method of making "pliolite."

On February 7, 1935, the examiner agreed that the amendments to the specification properly identified the rubber derivative used by appellants, and requested a further verified showing that the material produced as disclosed in the amended specification was known to the trade at the time of filing the application as "pliolite." The examiner then rejected the claims as being indefinite in the use of the term "rubber resin," stating: "* * * The term includes many substances, some of which are undoubtedly inoperative. The term also does not identify any definite group of substances and it is not known what substance might be included. The applicants have only disclosed one such material which can be otherwise positively identified and under the circumstances applicants cannot be their own lexicographer, at least in the manner attempted." Other reasons were given for that rejection, none of which are pertinent here in view of the issue presented.

On April 11, 1935, appellants submitted an amendment to the application, cancelling the specification and all of the claims then on file, and inserting instead a substitute specification and claims. At that same time an affidvait of appellant Moffett was tendered, further identifying "pliolite," and containing the following: "That the product referred to in the specification as "Plio-

lite" was on the open market at the time that affiant's joint application above identified was filed, and is still on the open market under the same trade name; that this product was procured from the manufacturer, Goodyear Tire & Rubber Company and was used in the development of the invention referred to in the above entitled application prior to the filing thereof."

The amendment and substitute specification were duly entered, as shown by the letter of the examiner dated August 12, 1935, and all of the claims were rejected, among other reasons not pertinent here, in the following language: "All of the claims are further rejected as not properly defining the invention when viewed in the light of the disclosure. While the additions to the specification are necessary and proper to properly disclose the invention, the recitation in claims of the method of making the resin is not proper. The expression *rubber resin* (pliolite) should be used."

The expression "rubber resin (pliolite)" appears in involved claims 33, 34, 35 and 47.

After further office action, unnecessary to relate here, the examiner, in a letter dated April 20, 1936, stated that "claims 31, 33, 34 and 35 are directed to probably allowable subject matter." Appellants, on April 27, 1936, cancelled all of the claims except those allowed and requested the application be passed to issue. On July 28, 1936, the examiner rejected claim 31 and allowed claims 33 to 35 inclusive. Claim 31 was cancelled and claims 33 to 35 inclusive are here bearing those numbers.

We do not deem it necessary to set out the further course of the application, except to state that it was involved in three interferences and was finally remanded to the Primary Examiner who rejected all of the claims which are before us.

■ The only questions to be decided here are (1) the sufficiency of the original disclosure, and (2) whether the substituted specification subsequently filed by the appellants contained new matter. In other words, can the terms "pliolite" and "plioform" as used in the application at the date of the filing thereof be held to be, in the light of the record, "such clear, concise, and exact terms as to enable any person skilled in the art" to practice the invention?

It will be noted that appellants are not seeking a patent on "plioform" or "pliolite" as a product, nor do they seek a patent for a method of preparing the same. Their claimed invention resides in the use of those substances with others in performing their process and making their article.

Neither the composition of "pliolite" or "plioform," nor a method of preparing them, nor who manufactured or sold them, is disclosed in the original application. It is stated, however, in the application, that a type of rubber resin can be used and that two forms of this resin now on the market are known as "plioform" and "pliolite."

The examiner, in his first action hereinbefore set out, recognized that "plioform" and "pliolite" are trade names. Appellants showed in the said publication of February 10, 1933, that "plioform" was made by the Goodyear Tire & Rubber Company, and that it was on the market at that date, which was almost two months prior to the filing date of their application. The publication contains in part the statement "Goodyear will not manufacture molded goods but will supply the Plioform resin, or compound, to manufacturers in the molded goods field." As proof that both "pliolite" and "plioform" resins were on the market prior to the filing date of appellants, the record discloses an order for those substances received by the Goodyear Tire & Rubber Company from the Marsene Corporation of America at Gary, Indiana, and the filling and shipping of the order on April 11, 1933.

Several affidavits are contained in the record showing clearly that the products called "Plioform" and "Pliolite" were known to the affiants and to others in the art here involved prior to April 14, 1933. The record further indicates that there were not, on the filing date of appellants, or at any time before or since, any rubber resin products other than those of the Goodyear Company known by the trade names here involved.

A fair interpretation of the facts herein leads to the conclusion that the Goodyear products "Plioform" and "Pliolite" were on the market and were known generally to those skilled in the art of chemistry at the time the original application was filed by appellants. With the information contained in the original application, therefore, it was possible for those skilled in the art at that time to practice appellants' invention, and thus it follows that the disclosure therein was sufficient.

■ In submitting their various amendments and the substituted specification and

new claims, appellants, in our opinion, endeavored to meet the objections and suggestions of the examiner. Apparently the examiner was satisfied with the application after the substitution was made, as is evidenced by his allowance of the three claims heretofore mentioned. It may be that with the substituted specification—explaining in detail the method of making "pliolite"—it would be easier for one skilled in the art to practice appellants' invention. However, this does not detract from the fact that it was possible to do so with the information originally furnished by appellants. In our opinion, therefore, the application as amended by the substitution is proper and does not contain new matter.

In view of all of the facts and circumstances of record, it is our opinion that the decision appealed from should be reversed and that appellants' claims herein should be allowed.

The decision of the Board of Appeals is reversed.

Reversed.

BLAND, Associate Judge, dissents.