## UNITED STATES RUBBER CO. v. MAR-ZALL, Commissioner of Patents.

Civ. A. No. 4736–47.

United States District Court
District of Columbia.

April 20, 1950.

Rehearing Denied July 21, 1950.

William Gates, Jr., and Harry Levy, New York City, Elmer Stewart, Mason, Porter, Diller & Stewart, Washington, D. C., associate counsel, for plaintiff.

E. L. Reynolds, Solicitor, U. S. Patent Office, Washington, D. C., J. Schimmel, Attorney, U. S. Patent Office, Washington, D. C., for defendant.

MORRIS, District Judge.

This is a proceeding under Section 4915 of the Revised Statutes, 35 U.S.C.A. § 63, in which the plaintiff, as assignee of the in-

ventor Lawrence E. Daly, seeks to have this Court adjudicate that it is entitled to receive a patent for the Daly invention as specified in claims involved in these proceedings, and authorization for the Commissioner of Patents to issue such patent. The claims in the Daly patent application, serial No. 468,428, filed December 9, 1942, involved herein are those numbered 3, 7 and 8, and are as follows:

3. A hard boardy thermoplastic which is the conversion product of heat and vulcanization at a temperature of from about 200 degrees F. to about 300 degrees F. of a mix composed essentially of a vulcanizable elastic rubber, a curing agent sufficient in amount to cure said rubber to a condition ranging from a soft to a semi-hard vulcanized state, and a normally solid thermoplastic hard inelastic resinous polymerization product derived from polymerizing a composition comprising butadiene and styrene, the proportion by weight of the hard resinous product ranging from 100 percent to 900 percent based on the elastic rubber.

7. A hard boardy thermoplastic which is the conversion product of heat and vulcanization at a temperature of from about 200 degrees F. to about 300 degrees F. of a mix composed essentially of an elastic copolymer of butadiene and styrene, sulfur sufficient in amount to cure said copolymer to a soft vulcanized state, and a hard inelastic resinous polymerization product derived from polymerizing a composition comprising butadiene and styrene.

8. A thermoplastic which is the heat-conversion product, at a temperature of from about 200 degrees F. to about 300 degrees F., of a mix composed essentially of an elastic copolymer of butadiene and styrene, a small amount of sulfur, and a normally solid thermoplastic hard inelastic resinous polymerization product derived from polymerizing a composition comprising butadiene and styrene, said thermoplastic heat-conversion product having a hardness (Shore) of about 80 to about 95, a tensile strength of from about 2000 to about 3000 pounds per square inch, a softening temperature of from about 160 degrees F. to about 220 degrees F., and being highly resistant to water and gasoline.

These claims were rejected by the Examiner in the Patent Office, which action was affirmed by the Board of Appeals. There are two issues raised by the defendant to the granting of the relief sought by the plaintiff: (1) That, as to all three claims, the specification is indefinite in that it does not describe how to make the hard inelastic thermoplastic resin which is an element of the composition described in each claim; and (2) that claims 7 and 8 do not contain any limitation to the relative proportions of elastic rubber and inelastic resin. There is no substantial contention that the product sought to be protected by a patent is not novel, or that it does not constitute a useful product. Both objections urged are that there is not sufficient disclosure to show to one skilled in the art how to make the product which is claimed.

At the hearing substantial evidence was taken, consisting chiefly of the testimony of Dr. Herman F. Mark, admittedly one thoroughly familiar and skilled in the art dealing with rubber and resins and the chemistry relating thereto involving the various procedures of polymerization and copolymerization. Numerous exhibits, including a German patent, No. 588,785, which describes in detail various methods of making a hard inelastic resin from butadiene and styrene were offered. To the admission of this patent, objection was made by the defendant upon the ground that it sought to vary the description contained in the specifications in the patent application. Final ruling upon this objection was in effect reserved, and the question has been argued in briefs of the parties. For the reasons which will be stated in the discussion on the sufficiency of the disclosures, the objection is overruled, and the German patent is admitted.

As is quite obvious, the patent sought in each of these claims is for a hard boardy thermoplastic which is the conversion product of heat and vulcanization of a mix of two products, both of which are

known to the prior art, and the making of neither of which are taught by the invention here involved. In the specifications, one of the constituents of the mix is described variously as "a natural rubber or artificially prepared rubber, or both," as "a vulcanizable rubber," and as "Buna S, which is a copolymer of butadiene and styrene, or other rubber, including natural rubber or elastic copolymer of butadiene and acrylontrile (Buna N) or polychloroprene (neoprene)," and in the claims "a vulcanizable elastic rubber" and "an elastic copolymer of butadiene and styrene." No complaint whatever is made as to the sufficiency of disclosure as to this constituent, and this is not surprising, as such product and method of making it are fully disclosed in German patent No. 570,980, to admission of which no objection was made. With respect to the other constituent in the mix, the instant application describes it variously as "a hard resinous inelastic polymerization product of a butadiene. Such a hard resinous polymer may be produced, among other ways, from polymerizing the butadiene in emulsion past the elastic state of the polymer or copolymer," and as "a hard inelastic thermoplastic resinous copolymer of butadiene and styrene." (This last description is said in a foot note to be "manufactured by the Marbon Corporation, Gary, Indiana, under the name Marbon S. This material has a Shore hardness over 100 and a softening point between 150 degrees F. and 200 degrees F.") The specifications further state, "in place of using the hard inelastic Marbon S (resinous Buna S) in the above formula, other hard thermoplastic resin polymers derived from the copolymerization of butadiene and acrylontrile or resinous polymers of chloreprene may be used instead of mixtures of any of these hard inelastic polymers may be used."[1] and in the claims, such resinous constituent is described as "a normally solid thermoplastic hard inelastic resinous polymerization product derived from polymerizing a composition comprising butadiene and styrene" and "a hard inelastic resinous polymerization product derived from polymerizing a composition comprising butadiene and styrene."

It is necessary to understand whether such descriptions of the resinous constituent of the mix is known to the prior art, and whether or not one skilled in the art can produce such constituent for use in the mix involved in the present patent application. The testimony of Dr. Mark shows beyond question that such constituent is disclosed, and the methods for making the same taught, in the German patent No. 588,785, which is a continuation or supplement to German patent No. 570,980. Dr. Mark testified that he had made such constituent according to the direction of such patent and had used the same in a mix with the soft rubbery constituent, and had produced a hard boardy thermoplastic, which is the product claimed in the instant application. There would thus seem to be no difficulty whatsoever, but for the fact that, in the specifications, the applicant makes the statement that such hard resinous constituent "may be produced, among other ways, from polymerizing or copolymerizing the butadiene in emulsion past the elastic state of the polymer or copolymer." From the evidence given by Dr. Mark, the critical distinction between the production of the soft elastic material and the production of the hard resinous material by polymerizing or copolymerizing butadiene and styrene is that in the former there is a high proportion of the butadiene to the proportion of styrene, and in the latter there is an extremely high proportion of the styrene to the butadiene. Perhaps it is not an apt way to say that the hard resinous constituent "may be produced, among other ways, from polymerizing the butadiene in emulsion past the elastic state of the polymer or copolymer," but obviously it is brought past the elastic state by the extremely high content of styrene in the emulsion. Even if the challenged statement were contained in an application for a patent on the process of making such hard resinous constituent, which is not the case here, it is strongly doubtful that the description of the chemi-

---

1. Undoubtedly some of these statements have to do with claims originally in the application, but which have now been dropped.

cal reactions in which the molecular structures of the ingredients are changed would be more than scientifically interesting and hardly determinative, patent-wise. The chemical journey which the ingredients took in reaching the state of the hard resinous constituent is even of less importance here. The present application does not purport to describe the method of making such hard resinous constituent. There is lacking altogether numerous disclosures necessary in the making of that part of the compound, but, if it were known to the prior art, there was no necessity here to describe it other than to identify the kind of hard resinous constituent which must be used in the mix to produce the product that is the invention for which patent protection is here sought, and this, according to the language employed, appears from the evidence to be clearly apparent to one skilled in the art. I cannot agree that the statement in the specifications is such as to interfere with the application of that which was well known to the prior art in the selection of one of the necessary constituents to be used in making the product claimed here. With the objection by the Patent Office to the reference in the specifications to "Marbon S," I thoroughly agree. The prior art does not teach how Marbon S is made, nor does the present application purport to make such disclosure. This, I think, however, is immaterial in view of the fact that the prior art did disclose an effective hard resinous constituent, as above set forth.

The other objection is that claims 7 and 8 do not contain any limitation to the relative proportions of elastic rubber and inelastic resin. It is not urged that claim 3 is deficient in that respect, it being conceded that "the proportion by weight of the hard resinous product ranging from 100 per cent to 900 per cent based on the elastic rubber" is adequate in this connection. Claim 7 is silent as to any proportion of the two constituents of the mix, and while claim 8 does not state such proportions, it claims a product having "a hardness (Shore) of about 80 to about 95, a tensile strength of from about 2000 to about 3000 pounds per

square inch, a softening temperature of from about 160 degrees F. to about 220 degrees F., and being highly resistant to water and gasoline." The specifications with respect to the proportions of the mix give an illustration of a preferred composition, the parts being by weight:

|                                                                              | Parts |
|------------------------------------------------------------------------------|-------|
| Hard inelastic thermoplastic resinous copolymer of butadiene and styrene     | 60    |
| rubber-like elastic copolymer of butadiene and styrene (Buna S)              | 40    |

In such illustration, the proportions of sulfur, or curing agents, are given and the properties of the resulting product are stated. Elsewhere in the specifications it is stated "the proportion of the thermoplastic resin to the elastic polymer or copolymer of a butadiene, for the purposes of the invention, may range from equal parts by weight of each to 90 parts of the resin to 10 parts of the elastic rubber or rubber-like component of the mix. The hardness and stiffness may be varied by varying the proportions of the hard resin to rubber material." Dr. Mark, in his testimony, related how he made the product given in evidence pursuant to the directions found in the application. He used the proportions stated in the illustration of a preferred composition, namely, 60 parts of the hard resinous constituent and 40 parts of the rubber-like elastic constituent. The result was a product having the properties described in claim 8. Clearly the claim should be read in the light of the disclosures made in the specifications, including the illustration, and when that has been done and such information enables one to produce the exact results which are claimed for the product, there does not appear to be a lack of disclosure respecting the necessary proportions of the constituents needed to produce that product.

Claim 7 must depend on the proportions other than that given in the illustration of a preferred composition if the product is to be any different from that covered by claim 8. The Patent Office insists that

the proportions of the constituents are critical and should be disclosed. It is conceded, however, that the disclosure of a range of such proportions of the hard resinous products ranging from 100 per cent to 900 per cent based on the elastic rubber is a sufficient disclosure of proportions. I can see no reason why the omission of such statement of proportions render claim 7 insufficient when the specifications disclose that the proportions "may range from equal parts by way of each to 90 parts of the resin to 10 parts of the elastic rubber or rubber-like component of the mix." If this range is sufficient, as the concession with respect to claim 3 seems to establish, I am of the view that claim 7, read in connection with the statements in the specifications, constitutes a sufficient disclosure.

For the reasons stated, I am of the opinion that the relief sought by the plaintiff with respect to claims 3, 7 and 8 should be granted. Counsel will prepare appropriate orders for submission in accordance with such conclusions.

### On Motion for Rehearing

The defendant filed a request for modification of the memorandum decision of the Court, in which it is insisted that it is not permissible to refer to the specifications to supply the range in proportions of the "soft elastic boardy material" and the "hard inelastic copolymer" claimed to form the "hard boardy thermoplastic" defined in Claims 7 and 8. It seems to me to be clearly established by many authorities, including decisions of the Supreme Court, that the claims may and should be read in the light of the specifications, and I can see no valid reason why this principle should apply any more to patent infringement litigation, where the validity of the patent is in issue, and such proceedings as are now before the Court. Of course, such a reading may not be used to enlarge the claims, but that is not the case here. It is a reference to the specifications to determine how to make the "hard boardy thermoplastic," which is the invention itself.

The motion for rehearing is denied.