Robert C. WATSON, Commissioner of Patents, Appellant,

v.

Frederick C. BERSWORTH and The Dow Chemical Company, Appellees.

No. 13566.

United States Court of Appeals District of Columbia Circuit.

Argued March 22, 1957.

Decided Jan. 9, 1958.

Petition for Rehearing Denied Feb. 28, 1958.

■■■■■■■■■■■■■■■■■■■■■■

Mr. Joseph Schimmel, Atty., United States Patent Office, with whom Mr. Clarence W. Moore, Solicitor, United States Patent Office, was on the brief, for appellant.

Mr. Thomas B. Graham, New York City, with whom Mr. Ellsworth H. Mosher, Washington, D. C., was on the brief, for appellees.

Before EDGERTON, Chief Judge, and BAZELON and DANAHER, Circuit Judges.

EDGERTON, Chief Judge.

This is a suit under 35 U.S.C. § 145, 66 Stat. 803, § 1, for a patent on certain

claims of an application filed in the Patent Office in 1951. The Patent Office rejected the claims as anticipated by certain references, namely two patents issued in 1947. The District Court overruled the Patent Office and the Commissioner of Patents appeals.

■ In 1946 appellees filed an application, Serial No. 657,893, which became Patent No. 2,524,218. If the disclosure in that application would have supported claims like those now in suit, had they been made then, the doctrine of "continuity" gives these claims the benefit of the filing date of that application and so entitles them to priority over the references. The Patent Office tribunals ruled that the 1946 disclosure would not have supported claims like these. The District Court held the contrary.

The claims are for a chemical compound described by specific formula, and for the basic metal salts of this compound. The 1946 application did not disclose the specific formula of this compound. According to undisputed testimony in the District Court, a general formula disclosed by the 1946 application "encompassed within [its] scope * * * a large number", possibly thousands, of compounds, including the one now specifically claimed; "a small number of known, but many unknown" compounds; chemists can "derive" the specific formula now claimed, and many others, from the general formula; "You derive the compound [now claimed] by assigning certain values to the $m$ variables set forth in the general formula" disclosed in 1946, but "there are many other compounds that would be derived in the same way * * *." A witness for appellees who testified, on direct examination, that the 1946 "formula, with the explanatory disclosure, specifically

dictates the formula" now claimed, testified on cross-examination that "One is led to other compounds as well" and that he "had a definite goal in mind" when he picked a particular "substituent".[1]

■ The difference between the Patent Office and the District Court, and the issue before us, is not factual. As the Commissioner of Patents says in his brief, "There is little, if any, disagreement as to the salient pertinent facts of this case." He does not deny that the appellees are entitled to a patent if their 1951 claims are entitled to priority over the 1947 references. The appellees do not contend that they are entitled to a patent if their claims are not entitled to priority over those references. The question is not whether an invention has been made. The question is whether the appellees are entitled to claim the invention. The answer turns on the relation between the words of the 1946 application and the words of the 1951 claims. And "the words of a patent or a patent application, like the words of specific claims therein, always raise a question of law for the court and may not be determined by the opinion of experts. Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147 * * *." Minnesota Mining & Mfg. Co. v. Carborundum Co., 3 Cir., 155 F.2d 746, 749. The 1946 disclosure would or would not have supported claims like the ones now made, according to whether such a general disclosure does or does not, in respect to such specific claims, meet the legal requirement that "The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such *full, clear, concise, and exact terms* as to enable any person skilled in the art to which it pertains * * * to make and use the same,

1. Since the Patent Office tribunals said nothing to the contrary, although the Commissioner's brief suggests a doubt, we assume in appellees' favor without deciding that the testimony meant the 1946 disclosure not only enabled chemists to *write the formula* now claimed but also enabled them to *make the compound* now claimed; despite the fact that it is not

clear, to us non-chemists, that either the testimony or the District Court's findings meant this. One of appellees' witnesses testified without dispute that there "may be years of research necessary in order to make many" of the specific compounds encompassed within the scope of the general disclosure.

and shall set forth the best mode contemplated by the inventor of carrying out his invention." 35 U.S.C. § 112. (Emphasis added.) "This is a question of law, open to this court, precisely as it was open to the court below." Minnesota Mining case, supra. On this appeal the Patent Office does not question, and we do not question, any of the testimony of appellees' witnesses. But we answer the question of law in the negative.[2] As a matter of law, an applicant cannot " 'include and claim a specific thing not originally described, merely because it comes within the scope of the genus before disclosed.' " In re Mraz, 36 App. D.C. 435, 438. An applicant "under the circumstances of this case, cannot preempt the entire field * * * by broadly teaching that useful results may be obtained by mixtures and combinations of a broad general group of materials without specifically naming such materials * * * or in some other manner pointing out his invention as is required by statute * * *." In re Collins, 75 F.2d 1000, 1002, 22 C.C.P.A., Patents, 1053. Minnesota Mining case, supra.

Reversed.

DANAHER, Circuit Judge (dissenting).

The philosophy permeating the majority opinion basically is one of nullification of the remedy provided by Congress, a result here reached (1) by according to the Patent Office the equivalent of a conclusive presumption of correctness; and (2) by holding that sufficiency of disclosure raises a question of law. Relegated to zero status is the District Court, with its findings, its conclusions, its memorandum opinion and its judgment. Judge Wilkin heard many witnesses, had the benefit of charts and exhibits, received detailed explanations as to the points in issue and possessed the advantage of colloquy with opposing counsel. The record discloses close and careful attention to the many aspects of the case brought under 35 U.S.C. § 145 which permits a dissatisfied applicant to pursue his remedy in the District Court which may adjudge the applicant entitled to receive a patent *"as the facts in the case may appear."* (Emphasis supplied.)

The majority views here given effect may be found more expansively set forth in Judge Edgerton's dissenting opinion in Carbide & Carbon Chemicals Corporation v. Coe.[1] Interestingly enough, contrary to the findings authorizing a patent in the instant case, the trial judge there found no invention, and Judge Edgerton, writing in support of his ruling, said: " 'Under the rule settled in this jurisdiction, while we are not absolutely bound by a chancellor's findings

2. If it were a question of fact the result would be the same. A mere preponderance of evidence, if any, would not justify the District Court in reversing a factual finding of the Patent Office. Concerning the factual question whether patent claims are inventive, for example, it has long been clear that " 'A mere preponderance of evidence' is not enough to justify reversing the Patent Office and deciding that an applicant is entitled to a patent." Abbott v. Coe, 71 App.D.C. 195, 197, 109 F.2d 449, 451. Even when, as often happens, the District Court has before it more evidence than the Patent Office had, it remains true that on a factual issue "the Patent Office finding must be accepted if it is 'consistent with the evidence,' the Patent Office being an expert body pre-eminently qualified to determine questions of this kind." Esso Standard Oil Co. v. Sun Oil Co., 97 U.S. App.D.C. 154, 157, 229 F.2d 37, 40. This includes the evidence before the court and the evidence before the Patent Office. On a factual issue the question "is whether all competent evidence, 'new' and 'old', offered to the District Court carries 'thorough conviction' that the Patent Office erred." Minnesota Mining & Mfg. Co. v. Carborundum Co., 3 Cir., 155 F. 2d 746, 748. If the District Court overrules a factual finding that is consistent with the evidence, the court is clearly wrong and we must reverse. In the present case, it appears to us that the Patent Office finding is not only consistent with the evidence but does not conflict with any of the evidence.

1. D.C.Cir., 1938, 69 App.D.C. 372, 378–383, 102 F.2d 236, 242–247; cf. his explanation of the case and his further views in Abbott v. Coe, infra note 3.

of fact, we are not to disturb them on appeal unless upon an examination of the evidence they are clearly wrong.'" 69 App.D.C. at page 382, 102 F.2d at page 246. We recently pointed out that under governing case law and the Federal Rules, even as to patent cases, "A finding of fact by the District Court, sitting without a jury, may be set aside on appeal only if it is clearly erroneous."[2] We noted that in such situations we are bound to inquire whether the District Court's findings are clearly erroneous. Here, no effort is made by the majority to demonstrate that Judge Wilkin's findings are "clearly wrong," or "clearly erroneous." They are simply and peremptorily spurned as meaningless and nugatory in the context of the majority's treatment of the problem. I shall later undertake to show that the District Judge, with thorough conviction, arrived at his amply supported findings on the new evidence before him. I fail to see how he could have found otherwise than he did.

I

Contrary to our recent cases, the majority really are saying even when the District Court has before it evidence the Patent Office did not have, on a question of fact "'the Patent Office finding must be accepted if it is "consistent with the evidence," the Patent Office being an expert body pre-eminently qualified to determine questions of this kind.' Esso Standard Oil Co. v. Sun Oil Co., 97 U.S. App.D.C. 154, 157, 229 F.2d 37, 40." That case did not so rule, I submit, ex-

cept in situations where the new evidence amounts to a mere preponderance. On the contrary, the opinion pointed out, 97 U.S.App.D.C. at page 159, 229 F.2d at page 42: "Of course, *if the decision of the Patent Office is not warranted on the evidence before it, or if the new evidence reaches the necessary standard,* the District Court *may rule as the totality of the evidence may require.*" (Emphasis mine.)

The majority in support of the status it accords to the Patent Office action cites Minnesota Mining & Mfg. Co. v. Carborundum Co., 3 Cir., 1946, 155 F.2d 746, 748. But that case went off on the "mere preponderance" test (compare Etten v. Lovell Manufacturing Company, 3 Cir., 1955, 225 F.2d 844, 848, certiorari denied, 1955, 350 U.S. 966, 76 S.Ct. 435, 100 L.Ed. 839, and the proof was deemed insufficient to meet the "thorough conviction" requirement spelled out in our case of Esso Standard Oil Company v. Sun Oil Company, supra note 2. In this respect, the result in the Minnesota Mining case was simply the converse of our Carbide & Carbon Chemicals case, supra note 1, where we found invention, thus reversing the District Court. Judge Edgerton explained that the latter opinion "should be understood to mean, not that the usual presumptions of administrative and judicial correctness are inapplicable in suits to obtain a patent, *but that the evidence in that particular case overcame these presumptions.*"[3] (Emphasis supplied.)

Therefore, I would suppose the true rule to be that above quoted from the

2. Esso Standard Oil Company v. Sun Oil Company, D.C.Cir., 1956, 97 U.S.App. D.C. 154, 156, 229 F.2d 37, 39, certiorari denied 1956, 351 U.S. 973, 76 S.Ct. 1027, 100 L.Ed. 1491; and see Graver Mfg. Co. v. Linde Co., 1950, 339 U.S. 605, 611; in the earlier case, Graver Tank & Mfg. Co. v. Linde Air Products Co., 1949, 336 U.S. 271, 274–275, 69 S.Ct. 535, 537, 93 L.Ed. 672, the Court had said:

"Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides in part: 'Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibil-

ity of the witnesses.' To no type of case is this last clause more appropriately applicable than to the one before us, where the evidence is largely the testimony of experts as to which a trial court may be enlightened by scientific demonstrations. * * * He wrote a careful and succinct opinion and made findings covering all the factual issues."

3. Abbott v. Coe, D.C.Cir.1939, 71 App. D.C. 195, 198, 109 F.2d 449, 452; and see discussion of this point in Standard Oil Development Co. v. Marzall, D.C. Cir.1950, 86 U.S.App.D.C. 210, 213, 181 F.2d 280, 283.

Esso Standard Oil Company case, supra. So applied, the test was overwhelmingly met by the evidence here, in character and amount carrying thorough conviction. The answers on cross-examination quoted by the majority had largely to do with the non-elected subject matter in another divisional application, indeed the applicant's Claim 1 was, by express stipulation of the parties, withdrawn from this case. Affirmatively the expert referred to by the majority made it clear he was answering merely in terms of the "theoretical." He testified unequivocally that the compounds to be derived from the claims in issue were the most practical and the most obvious, and that one skilled in the art would arrive at these compounds. His testimony in terms of the realities was abundantly supported. Surely the appellant could not plausibly argue that to have sufficient disclosure the claimed compounds must be the only ones which a chemist would derive; otherwise every application would have to be so specific that no alternative compounds would be possible. Nor did the Patent Office so argue, for its counsel surely recognized the doctrine of continuity, and he knew any such result would render meaningless the statute which permits a prior filing date to be given to a subsequent claim when that claim is disclosed in the prior application. Actually the Patent Office conceded invention as to the subject matter here, indeed various patents were issued, including the references relied upon by the Patent Office. Of course the claim here could not have been allowed in the patents referred to since they claimed different inventions. I fail to understand an assertion of lack of disclosure since the Board of Patent Appeals finds and sets forth the very formula before the court. That is the way the record stood before the new evidence was presented to the District Court upon which its findings are based. It seems to me that the findings not only are not shown to be clearly erroneous, they are clearly right, and the new evidence supporting them reached the "necessary standard," supra. Thus there is here no room for the presumption of correctness, and it should be laid out of the case.

## II

The majority, to avoid the impact of our Esso rule, conclude erroneously I think, that here is presented a question of law arising from "the words of a patent or a patent application." The majority say the specification shall set forth its disclosure in "full, clear, concise, and exact terms * * * 35 U.S.C. § 112," and " 'This is a question of law * * *.' " But the majority fail and decline to give effect to the statute at precisely the point critical in this case, for the statute is satisfied if disclosure is in such terms *"as to enable any person skilled in the art to which it pertains * * * to make and use the same * * *."* (Emphasis supplied.) Thus, the question was not one of construing the "words" of the application, but whether the disclosure was sufficient to a "person skilled in the art." On that point the evidence of the experts is received by the courts, not as determining the issue, but as affording proof upon which the trier must pass as to what the application discloses to those skilled in the art.

As Judge Learned Hand wrote long since in Kohn v. Eimer, 2 Cir., 1920, 265 F. 900, 902:

"Specifications are written to those skilled in the art, among whom judges are not. It therefore becomes necessary, when the terminology of the art is not comprehensible to a lay person, that so much of it as is used in the specifications should be translated into colloquial language; in short, that the judge should understand what the specifications say."

And see Carnegie Steel Co. v. Cambria Iron Co., 1902, 185 U.S. 403, 437, 22 S.Ct. 698, 711, 46 L.Ed. 968, "The specification of the patent is not addressed to lawyers * * *."

Here, the District Judge heard the experts and witnessed their demonstrations. One, a professor, had put before his class in organic chemistry the very problem in suit. Student after student

took the witness stand and testified to the evolution of the formula for the compounds defined in the claim, and each illustrated its achievement from the specification and the descriptions of the instant claim. Thus, the experts, and even those not yet graduated, demonstrated the sufficiency of the disclosure. The only question of law was that involved in the judgment of a trier who, when he understood the specifications, was bound to accept the responsibility for decision as to sufficiency. I suggest he correctly decided upon findings arrived at with complete conviction that continuity of the subject matter defined by the claim was maintained before the Patent Office at all times here material.

I see here, not a matter of construing language, not a question of law, but one of fact [4] as to what was disclosed to those skilled in the art.

### III

The cases my colleagues cite and rely upon may readily be distinguished, I submit. They quote from Minnesota Mining & Mfg. Co., supra, where they necessarily include Sanitary Refrigerator Co. v. Winters, 1929, 280 U.S. 30, 50 S. Ct. 9, 74 L.Ed. 147, as cited by the Third Circuit. The latter case, 280 U.S. at page 36, 50 S.Ct. at page 11, limits itself to saying that upon *"undisputed evidence* the question of *infringement* resolves itself in each case into one of law * * *."* (Emphasis added); and again, 280 U.S. at page 43, 50 S.Ct. at page 13, the Third Circuit decree was reversed because the Court's conclusion was reached "under the controlling weight of the undisputed facts * * *."

As Judge Maris recently wrote: "It may be conceded that the question of construing the claims of a patent is one of law in the sense that, as in the case of other integrated documents, it is a question for the court and not the jury. But

the question of infringement involves also questions of fact, such as the nature of the devices alleged to infringe * * *. Thus the finding of infringement is a finding of fact * * *." Vanderveer v. Erie Malleable Iron Co., 3 Cir., 1956, 238 F.2d 510, 514, citing, in footnote 14, three cases. Clearly, as the note shows, he is speaking there of Singer Mfg. Co. v. Cramer, 1904, 192 U.S. 265, 275, 24 S.Ct. 291, 295, 48 L.Ed. 437, as holding infringement presents a question of law only where *"extrinsic evidence* is *not needed to explain terms of art* therein, or to *apply* the *descriptions to the subject-matter."* (Here the extrinsic evidence was properly received for both purposes.) In that same sense and in the same note, Judge Maris cites the Minnesota Mining & Mfg. Co. case. Thus, not even in the Third Circuit is the latter case relied upon for the proposition here asserted; indeed the case has never been cited by the Supreme Court nor by any court of appeals but this one, so far as I can see. On the contrary, the rule in the Third Circuit is set forth in White v. E. L. Bruce Co., 3 Cir., 1947, 162 F.2d 304, 305, following Hazeltine Corp. v. General Motors Corp., 3 Cir., 1942, 131 F.2d 34, where at page 37, that court said:

> "Whether a patent shows invention is a question of fact and the findings of the trier of fact upon this issue are not to be disturbed unless clearly erroneous or not supported by substantial evidence. [Citing Keyes v. Grant, 1886, 118 U.S. 25, 6 S.Ct. 974, 30 L.Ed. 54, and several other Supreme Court cases.]"

The majority quotes a sentence from In re Mraz, 1911, 36 App.D.C. 435, but the context must be appraised. There, the appellant's original application was rejected since he had claimed a composition consisting of gelatin, glycerin and an

---

4. Cf. Faulkner v. Gibbs, 9 Cir., 1948, 170 F.2d 34, 37, affirmed 1949, 338 U.S. 267, 70 S.Ct. 25, 94 L.Ed. 62; and see Standard Oil Development Co. v. Marzall, D.C. Cir., 1950, 86 U.S.App.D.C. 210, 181 F. 2d 280; White v. E. L. Bruce Co., 3 Cir.,

1947, 162 F.2d 304; and see cases cited, note 19 infra; for the "words" of this application, see the *chemical formulation* in note 13 infra. How this presents a "question of law" has not been brought home to me.

"oxygenated solution," but failed to give an example of "oxygenated solution." Thus there was insufficient description. Had his specification included bone meal as an example of "oxygenated solution," we might have had an apt analogy. The Mraz amendment, however, simply substituted "bone meal" for "oxygenated solution" which, the court quite correctly said, was a substitution of new matter, not previously disclosed. On its face the Mraz case has no present application since here the claims neither present new matter nor enlarge the original specification. Rather, the present claims, by those skilled in the art, have been demonstrated to be an application of the specifications to the original generic formula, as the trial court properly found.

Similarly, In re Collins, 1935, 75 F.2d 1000, 1002, 22 C.C.P.A., Patents, 1053, 1055, may be distinguished, particularly since it cites and explains In re Mraz in the very terms I have just discussed.

I submit that the authorities relied upon do not apply to, and certainly do not control, the disposition of the issue here presented. Rather, the District Court here received detailed and extensive new evidence as to the sufficiency of the disclosure to those skilled in the art. It recognized fully the deference ordinarily due to the findings of the Patent Office but found that the new evidence was clear and convincing, and thus reached "the necessary standard" for thorough conviction, as spelled out in the Esso case, supra.

## IV

That my affirmative view may more fully appear, in deference to my colleagues, I will analyze the case in detail as I see it.

Bersworth instituted action under the provisions of 35 U.S.C. § 145 asking the District Court to authorize the Commissioner to issue a patent upon certain claims of his application, Serial No. 215,-380, filed March 13, 1951, entitled "Hydroxy Derivatives of Alkylene Polyamines."[5] Appellees urged before the Patent Office and in the District Court, and the trial judge found, that certain subject matter had originally been described and claimed and thereafter had been carried continuously in a series of divisional and continuing applications before the Patent Office. The Commissioner argued that the compounds defined in the instant application had been disclosed in two of Bersworth's patents, publication of which more than one year prior to the date of the instant application raised a statutory bar to the grant here sought. Judge Wilkin's order authorizing relief gave rise to the Commissioner's appeal.

The case turns on the applicability of the doctrine of continuity,[6] both parties being in agreement that the applicant's right stands or falls on the sufficiency of the disclosure[7] in Bersworth's applica-

5. By order of the District Court, pursuant to stipulation, the Dow Chemical Company was added as party plaintiff. It was further stipulated that Claims 1 and 3 might be dismissed without prejudice. Claim 2 defines by formula two compounds, diethanol ethylene diamine diacetic acid and dipropanol ethylene diamine diacetic acid. Claim 4 defines the basic metal salts of the compounds of Claim 2. Claim 2 is typical. This group or class of organic compounds is said to have wide utility in the chemical arts as chelating agents which hold metal ions in aqueous solutions in such form that chemically they are no longer effectively present in the water. In addition, the compounds in question are said to have strong detergent and wetting properties and to be compatible with soap.

6. Originating in Godfrey v. Eames, 1864, 1 Wall. 317, 68 U.S. 317, 17 L.Ed. 684, the principle of which was recognized in Crown Cork & Seal Co. v. Ferdinand Gutmann Co., 1938, 304 U.S. 159, 165, 58 S.Ct. 842, 82 L.Ed. 1265. And see 35 U.S.C. § 120 (1952) as related to 35 U.S.C. § 112 (1952).

7. See discussion in Commentary on the New Patent Act, 35 U.S.C.A. pp. 31, 33 preceding section 1. "The statute is so worded that the first application may contain more than the second or the second application may contain more than the first, but in either case the second application would be entitled to the benefit of the filing date of the first case *with repect to common subject matter*." (Emphasis supplied.)

tion which matured into patent No. 2,-524,218, Case A.[8]

Establishment of the sequence of events importantly requires the interpolation of much detail.

On June 21, 1943, Bersworth filed two applications, one maturing as patent No. 2,407,645 which was issued September 17, 1946, and another, as patent No. 2,428,353 which was issued October 7, 1947. On July 17, 1943, he filed an application for patent No. 2,413,856 which was issued January 7, 1947.[9] While these applications were pending, Bersworth, on March 28, 1946, filed application S.N. 657,893 which matured as patent No. 2,524,218, Case A, issued on October 3, 1950.

While Case A was pending,[10] Bersworth on July 17, 1948, filed application S.N. 39,377 [11] which remained before the Patent Office until March 21, 1951. As Case B, it was then abandoned, but not until after Bersworth on March 13, 1951, had filed application S.N. 215,380, which is the application in suit.[12] The instant application, Case C, specifically identified its predecessor application, Case B, as a continuation-in-part of the parent application, Case A.[13] Case C, like abandoned Case B, contained a specific claim to the chemical compound included within the subject matter of Case A, but particularly defined by name and by formula in Case C.

Thus at all times here involved there were before the Patent Office, co-pending applications involving the same subject matter, the inventiveness of which has not been challenged. The Commissioner's brief tells us that "as to all common subject matter carried over into the continuing application from the parent application, the former is entitled to the benefit of the latter. * * * What is in dispute here is appellees' *claim of right* to rely upon the application which matured into Patent No. 2,524,218, [Case A] a bridging application, for the specific subject matter of the claims in issue, [Case C], which subject matter was first specifically disclosed in intermediate application Serial No. 39,377, [Case B]."[14]

8. This patent on appellees' chart, an exhibit of record, is marked "Case A." I will similarly refer to later applications as Case B and Case C and so identify them for present purposes.

9. The sole ground for Patent Office refusal of a patent in this present case is that the compounds defined in the claims here in issue are disclosed in the two last identified Bersworth patents, relied upon as references. While the inventions actually claimed in 1943 were different, the general subject matter here involved was therein first disclosed. Without more, the publication dates being more than one year prior to the date of the application in suit, these references would bar a grant here. But there is more, as will be seen.

10. Case A contained a generic claim to compounds as disclosed in the specification but division was required by the Patent Office. Bersworth then on March 15, 1947, filed application S.N. 735,018 which matured as patent No. 2,532,391, issued on December 5, 1950. It defined the broad subject matter by formula almost identically as it appeared in Case A. Case B was likewise so filed.

11. This is Case B; see note 8 supra.

12. This is Case C; see note 8 supra.

13. I quote from the latter, page 1, column 1, lines 25–46, inclusive:
"The alkylene polyamine derivatives of the present invention are represented by the following formula:

$$\begin{array}{c} A \\ \diagdown \\ \phantom{N} \\ \diagup \\ D \end{array} N-(CH_2)n- \left\{ \begin{array}{c} N-(CH_2)n- \\ | \\ D \end{array} \right\}_m -N \begin{array}{c} \diagup A \\ \phantom{N} \\ \diagdown D \end{array}$$

wherein $n$ is either 2 or 3 and $m$ is either zero or a positive integer and wherein D is a member of the group consisting of $-CH_2COOH$, $-CH_2CH_2COOH$ and their alkali metal salts, and wherein A is a hydrocarbon group containing at least two carbon atoms and having not more than two hydrogen atoms replaced by a member of the group consisting of $-(CH_2)_2COOR$, $-(CH_2)_2COOM$, $-SO_3H$, $-SO_3M$, $-OR$ and $-OR'OR$ wherein R is alkyl or hydrogen, M is an alkali metal, and R' is alkylene, said groups being spaced at least two carbon atoms from the nitrogen atoms."

14. Appellant's Br. 8.

Patent Office counsel urged before Judge Wilkin that the applicant must show he could be entitled to claim the specific compound under the disclosure in Case A, and that the evidence showed "that he did not disclose it by name."[15] The names of the compounds do not appear in Case A.[16] But they are formulated.

Appellees' counsel agreed that the issue had been "pin-pointed"; thus, "if the disclosure of our Case A specifically gives us the compound we have in Exhibit 5, we are certainly entitled to this patent."

In evaluating the legal sufficiency of appellees' parent disclosure,

" * * * an inventor is required in his application for a patent to disclose the invention in such full, clear, concise, and exact terms as to enable one skilled in the art to make, construct, compound, and use the same. There is no requirement in [35 U.S.C. § 112 (1952)] that a party relying on a constructive reduction to practice to establish priority of invention must show a specific working example to support the compound claimed. For this reason, if compound 17 would be the natural and expected result achieved by one skilled in the art following the procedures outlined by appellees in their parent specification, such disclosure must be regarded as sufficient."[17]

The court in the Lawson case adopted the opinion of the majority of the Board of Patent Interferences, from which it quoted at length:

"After careful consideration of the parent disclosure we are satisfied that a person skilled in the art, following the general and specific teachings therein, would encounter no difficulty in producing compound 17. * * * it is not denied by the Examiner, or the senior party that compound 17 can actually be produced by following closely the analogous and general procedures disclosed in the parent application. We appreciate that it may involve some judgment on the part of the skilled worker. This, however, is true even in cases where examples are given since obviously every detail of the necessary procedure cannot be given in a patent specification and many details must be left to the skill of the chemist."[18]

The appellees offered evidence to establish that organic chemical nomenclature gives a skilled chemist a word picture of the structural formula of an organic chemical compound, that a structural formula gives a skilled chemist a word name for an organic compound, and that the word code conveys a description of organic chemical structure so that chemists can reproduce that structure. Accordingly, an organic formula written in structural form is the equivalent of an organic name derived from the rules of nomenclature in common use in or-

15. It is not suggested how there can be, by itself, a meaningful "name" of a newly discovered chemical compound. A formula which dictates to one skilled in the art the steps to be taken in the composition of matter would seem a preferable form of disclosure. Common salt may be known to us as a colorless or white crystalline substance; it may be known chemically as *sodium chloride;* but if it is identified as NaCl, it is the same the world over, it is nothing but common salt. Compare Lamm v. Watson, D.C.D.C.1955, 138 F.Supp. 219.

16. "Appellant concedes that the general formula is the same in all three of these cases. * * * However the claims at issue are specific, not broad. Claim 2, for example, is clearly and expressly limited to two distinct compounds, the diethanol ethylene diamine diacetic acid and the dipropanol ethylene diamine diacetic acid." Appellant's Br. 11.

17. Lawson v. Bruce, 1955, 222 F.2d 273, 278, 42 C.C.P.A.,Patents, 893; and see In re Gebauer-Fuelnegg, 1941, 121 F.2d 505, 28 C.C.P.A.,Patents, 1359; United States Rubber Co. v. Marzall, D.C.D.C.1950, 91 F.Supp. 1.

18. Lawson v. Bruce, supra note 17, 222 F. 2d at page 277, 42 C.C.P.A.,Patents, at page 898.

ganic chemistry. The trial judge correctly received the evidence of the experts as to what is understood and applied by those engaged in the art of organic chemistry, in order to resolve and to decide a question of fact.[19] Against that background and with the formula[20] at hand, the witnesses traced the successive steps leading directly to the elected species defined in appellees' claim 2.[21] The trial judge specifically found:

"12. The evidence before this Court was clear and convincing that the symbols set out in the formula as in finding 10, when interpreted in the light of the specifications, did lead those experienced in this field of chemistry and advanced students of such chemistry to the embodiment claimed by the plaintiffs. The testimony of the experts was clear and convincing that the language of the original application, including the chemical symbols, did lead directly to the composition for which the plaintiffs seek a patent monopoly.

"13. Claim 2 of the United States Patent Application S.N. 215,380 is specifically supported by the disclosure of United States Patent 2,524,218. In fact, Claim 2 of S.N. 215,380 was directly derived from Claim 1 of United States Patent 2,524,218 as filed.

"14. The Patent Office having conceded that the subject matter of United States Patent Application S.N. 215,380 is inventive, claims 2 and 4 define inventive subject matter."

To recapitulate, the allowed Case A, with its generic claim to compounds in the form in which disclosure appears in the specification, is but a concentrated disclosure of specific formulae for some six compounds, one of which is more specifically defined by the claims in suit.[22] Thus one should look to Case A for the genus of which the instant claims are but species, elected and prosecuted after the required division. The trial judge has found the instant claims are the natural and expected result to be achieved by those skilled in the art following the procedures as specified and accompanying the disclosure in Case A. I believe he was right.

19. Research Products Co. v. Tretolite Co., 9 Cir., 1939, 106 F.2d 530, 533; cf. International Standard Electric Corp. v. Ooms, D.C.Cir., 1946, 81 U.S.App.D.C. 215, 157 F.2d 73; International Standard Electric Corp. v. Kingsland, D.C. Cir., 1948, 83 U.S.App.D.C. 355, 169 F.2d 890.

20. Supra note 13.

21. We quote from the Memorandum filed by the trial judge:
"The evidence before this Court was clear and convincing that the symbols, when interpreted in the light of the specifications, did lead those experienced in this field of chemistry and advanced students of such chemistry to the embodiment claimed by the plaintiffs. The testimony of the experts was clear and convincing that the language of the orignial application, including the chemical symbols, did lead directly to the composition for which the plaintiffs seek a patent monopoly."

22. It would seem beyond question that the subject matter of the invention was continually before the Patent Office. Godfrey v. Eames, supra note 6; Field v. Colman, D.C.Cir., 1913, 40 App.D.C. 598, 606, certiorari denied 231 U.S. 747, 34 S.Ct. 320, 58 L.Ed. 465. Thus, cases such as In re Stoll, 1947, 161 F.2d 241, 34 C.C.P.A.,Patents, 1058, do not apply.